Burton R. WALDEN, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–860–MR.

Supreme Court of Kentucky.

Jan. 17, 1991 *.

Rehearing Denied April 11, 1991.

* Decided before December 31, 1990, GANT and VANCE, JJ., sitting.

Larry H. Marshall, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

## OPINION OF THE COURT

On April 16, 1988, the appellant, Burton R. Walden, was operating his van on a two-lane country road in Madison County, at a high rate of speed, when he dropped a wheel off the pavement, lost control, crossed the center line, and struck a vehicle occupied by Vickie S. Hall, causing her death. Police found empty beer cans in the back of Walden's vehicle, and he smelled "pretty strongly" of alcohol. A blood alcohol sample drawn at a nearby emergency room tested out to .297%. A qualified expert witness testified this was not far short of the 0.3% reading at which the average person would normally pass out. The expert also testified that this level of intoxicants would delay reaction time and cause disorientation, confusion, a problem with depth perception and balance, and affect one's judgment.

A Madison County jury found appellant guilty of wanton murder and operating a motor vehicle while under the influence of alcohol (second offense), in violation of KRS 507.020(1)(b) and KRS 189A.010, respectively. He has been sentenced to twenty years on the wanton murder charge, and six months in jail and a $500 fine on the driving under the influence second offense charge, the sentences to be served concurrently. He appeals to our Court as a matter of right, raising issues of double jeopardy, insufficient evidence to prove wanton murder, and trial error in admitting evidence of the statutory presumption regarding intoxication.

An expert testified regarding the effects that would be caused by the appellant's blood alcohol level of intoxicants, and, in addition, over appellant's objection the trial court read to the jury the statutory presumption in KRS 189.520(3)(c), stating:

"If there was 0.10 percent (1/10%) or more by weight of alcohol in such blood, it shall be presumed that the defendant was under the influence of intoxicating beverages."

At this point defense counsel moved the trial court to admonish the jury that this statutory presumption applied "only to the charge of driving under the influence" and had "no weight or influence to any charge in the indictment as it relates to murder." The trial court refused this admonition stating:

"[I]t's all one thing, he was either under the influence for the driving under the influence and as part of his wanton conduct or he wasn't. And it's pretty hard to separate the yoke and the white in this particular egg; ..."

The first issue we will discuss is whether it was prejudicial error for the trial court to permit this evidence on the vehicular homicide charge, and to refuse the requested limiting admonition. *Overstreet v. Commonwealth*, Ky., 522 S.W.2d 178 (1975) so holds, stating:

"[T]he statute is confined by its terms to prosecutions for the statutory offense of operating a vehicle under the influence of intoxicating beverages, which is a misdemeanor....

[T]he foregoing statute, which provides a convenience for the benefit of the prosecution in a limited type of misdemeanor case, cannot reasonably or fairly be extended to provide the same convenience for the prosecution in cases of a more serious character, such as the one here involved for first-degree involuntary manslaughter, a felony carrying punishment of imprisonment up to 15 years." *Id.* at 179.

But although *Overstreet* states such evidence is *not* admissible, it then holds the error not prejudicial because of "ample evidence" from other sources that the appellant was drunk. *Id.* The situation in the present case is similar. In *Overstreet* the blood alcohol reading was .28%. Here it is .297%. Like *Overstreet*, here also, there is overwhelming evidence from sources oth-

er than the reading of the statute to prove the appellant was drunk at the time of the collision. By his own testimony the appellant had started drinking early the previous evening at the "Foot Loose Saloon." About 12:30 a.m. he called his wife and told her that since he had been drinking he was not going to drive home but would stay at a friend's house for the night. He testified he stopped drinking about 1:30 or 2:00 a.m., went to bed shortly thereafter, and got up feeling sober shortly before 9:00 a.m. the next morning to drive home. But his inebriated condition at the scene and his blood alcohol level were not consistent with this claim.

Thus, while the Commonwealth has conceded, and we agree, that it was error to instruct the jury in the murder prosecution on the statutory presumption that applies only to D.U.I. cases, we also agree with the Commonwealth that here it was harmless error. Each charge prosecuted must stand on its own bottom, and the trial court erred in permitting the Commonwealth to piggyback the statutory presumption into the murder prosecution by claiming that it was admissible in the D.U.I. prosecution. On the contrary, if the Commonwealth elects to prosecute both charges in the same trial, the fact that it is inadmissible in the murder case means the statutory presumption should not be used in the D.U.I. prosecution, rather than vice versa. In *Wells v. Commonwealth*, Ky., 561 S.W.2d 85, 86 (1978), we state that the D.U.I. "statutory presumptions are legislative substitutes for expert testimony devised for prosecutorial convenience in narrowly limited situations." Here the so-called legislative substitute should not have been utilized, but it was merely cumulative of other highly persuasive expert testimony to the same effect, so the harmless error rule (RCr 9.24) applies.

■ The appellant asserts he was entitled to a directed verdict of acquittal as to the wanton murder charge because the evidence was insufficient to prove the essential element of "extreme indifference to human life" as required by KRS 507.-020(1)(b). In *Hamilton v. Commonwealth,*

Ky., 560 S.W.2d 539, 541 (1978), this Court recognized driving under the influence as sufficient to prove the element of wanton conduct required in KRS 507.020(1)(b). As here, in *Hamilton* the appellant contended that "mere speeding and intoxication are not sufficient to sustain a conviction for murder because the defendant [Hamilton] did not have the culpable state of mind required." We stated:

> "A majority of the members of this Court is of the opinion that the legislature enacted KRS 507.020(1)(b) to deter such conduct." *Id.* at 544.

A Dissenting Opinion by Chief Justice Palmore, joined by two others, stated "I do not believe that either the drafters of the Kentucky Penal Code or the members of the General Assembly that enacted it had any intention of placing the reckless act of an automobile driver, whether drunk or sober, in the same category as that of a deliberate murderer."

Whatever the legislative view might have been of the elements of wanton murder in 1974 when the Penal Code was enacted, this view of legislative intention is dispelled by an Amendment in 1984, enacted as part of the so-called "Slammer Bill" directed at drunk driving. The 1984 Amendment adds to KRS 507.020(1)(b) by specifying as a prefatory phrase, "including, but not limited to, the operation of a motor vehicle...." So this subsection [KRS 507.020(1)(b) ] of the murder statute now reads, somewhat awkwardly:

> "*Including, but not limited to, the operation of a motor vehicle* under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." Ky.Acts 1984, Chapter 165, Section 26. [New portion underlined.]

■ The 1984 Amendment declares legislative intent to include vehicular homicide as *potentially* serious enough to justify a murder conviction, but it does *not* change the essential nature of the elements of the offense. Wanton murder continues to be distinguished from second-degree man-

slaughter, KRS 507.040, which also punishes "wantonly caus[ing] the death of another person," by the additional element described in the phrase, "under circumstances manifesting extreme indifference to human life." The 1984 "Slammer Bill" also amended second-degree manslaughter (KRS 507.040) by adding the phrase, "including, but not limited to, the operation of a motor vehicle." The difference between wanton murder and involuntary manslaughter (Manslaughter II) continues to be, as the Penal Code originally intended, whether there is evidence from which the jury could find "circumstances manifesting extreme indifference to human life." Depending on the situation, drunk driving may be such a circumstance.

In *Nichols v. Commonwealth*, Ky., 657 S.W.2d 932 (1983), involving "firing of a pistol into an occupied car," we held that whether the evidence proved wanton murder or second-degree manslaughter was a question of fact, quoting the Model Penal Code, § 201.2 [sic], Comment 2 (Tent.Draft No. 9, 1959), to the effect that whether wantonness is so extreme that it demonstrates such indifference to human life as to qualify as the culpable equivalent of intentional murder "is not a question that, in our view, can be further clarified; it must left directly to the trier of the facts." 657 S.W.2d at 935. Applying this rule to present circumstances, we hold that here the extreme nature of the appellant's intoxication was sufficient evidence from which a jury could infer wantonness so extreme as to manifest extreme indifference to human life. Therefore, we affirm the conviction for wanton murder.

■ Next, although unpreserved by contemporaneous objection, we consider the double jeopardy question. *Jones v. Commonwealth*, Ky., 756 S.W.2d 462 (1988). As we held in *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615 (1977), the constitutional protection against double jeopardy is not waived by failing to object at the trial level. The Commonwealth has questioned whether this rule applies where the claim of double jeopardy relates to multiple prosecutions in a single trial, as contrasted with cases involving successive prosecutions, but *Sherley* is just such a case. So is *Jordan v. Commonwealth*, Ky., 703 S.W.2d 870 (1986) and *Jones v. Commonwealth, supra.*

Recently, in *Grady v. Corbin*, 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the United States Supreme Court affirmed a New York case, *Corbin v. Hillary*, 74 N.Y.2d 279, 545 N.Y.S.2d 71, 543 N.E.2d 714 (1989), with a fact situation very similar to the present one. That case held conviction for both driving while intoxicated and for a vehicular homicide charge based on driving while intoxicated constituted double jeopardy. The Commonwealth has questioned the application of *Grady v. Corbin* to the present case on grounds that it involved *successive* prosecutions whereas in the present case there was but a single trial. We do not undertake to decide whether under federal law there is a distinction between multiple prosecutions in successive trials or in the same trial for what is factually a single offense, because these Kentucky cases cited above (*Sherley, Jordan* and *Jones*), applying § 13 of our own Kentucky Constitution and KRS 505.020 of the Kentucky Penal Code, have made no distinction between multiple prosecutions in the *same* trial or in *successive* trials. Our Kentucky Constitution, § 13, provides "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb," and KRS 505.020 attempts to provide standards for applying our Kentucky Double Jeopardy Clause.

■ In *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990), we analyze our Kentucky constitutional protection against multiple convictions for what is factually a single offense, and we conclude that regardless of language in earlier opinions suggesting "the protections against double jeopardy afforded by the Kentucky Constitution are coextensive with those guaranteed by the Fifth Amendment of the Constitution of the United States.... Our interpretation of [our own constitution] has not in fact mirrored the United States Supreme Court's reading of the other." *Ingram* expressly states constitutional protection

against multiple punishments for crimes which are factually a single offense applies under Kentucky law, rejecting a distinction if any there be under federal law on the basis of successive rather than the same trial. We hold here, as we do in *Ingram*, that under Kentucky constitutional law this right does not depend for its existence upon prosecutorial discretion attaching to the decision to try multiple charges in the same trial rather than in successive trials.

In *Corbin v. Hillary, supra*, and *Grady v. Corbin, supra*, first the New York Supreme Court held, and then the United States Supreme Court affirmed, that a defendant who had previously plead guilty to the misdemeanor charge of driving while intoxicated, could not subsequently be prosecuted for criminal homicide growing out of the same incident. The United States Supreme Court holds in *Grady:*

"In *Illinois v. Vitale*, 447 U.S. 410 [100 S.Ct. 2260, 65 L.Ed.2d 228] (1980), we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in *Vitale*. We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." —— U.S. at ——, 110 S.Ct. at 2087, 109 L.Ed.2d at 557.

Here, as in *Grady v. Corbin*, the proof that the appellant was driving under the influence of alcohol was the same proof used to establish the wanton conduct element of the criminal homicide.

■ The Commonwealth maintains that theoretically wanton murder and D.U.I. are not the same offense, using the so-called *Blockburger* test. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), states there is no dou-

ble jeopardy so long as each statute "requires proof of a fact which the other does not." In *Grady v. Corbin*, the United States Supreme Court expressly rejects *Blockburger* as the "exclusive definition of the term 'same offense' in the Double Jeopardy Clause." —— U.S. at ——, n. 8, 110 S.Ct. at 2091, n. 8, 109 L.Ed.2d at 561, n. 8. *Grady v. Corbin* cites *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Payne v. Virginia*, 468 U.S. 1062, 104 S.Ct. 3573, 82 L.Ed.2d 801 (1984) and *Illinois v. Vitale, supra*, all of which "recognized that a technical comparison of the elements of the two offenses as required by *Blockburger* does not protect defendants sufficiently from the burdens of multiple trials." *Grady*, —— U.S. at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. The inquiry begins at the *Blockburger* test but it does not end there.

As we stated in *Jones v. Commonwealth, supra*, "the fact that theoretically there are elements in each offense different from the other offense is not sufficient to justify convictions for both." 756 S.W.2d at 463. To evaluate a double jeopardy claim, this Court does "not ... merely look at the statutes standing alone." *Hamilton v. Commonwealth*, Ky., 659 S.W.2d 201, 202 (1983). While there was also proof of speeding and reckless driving, it is clear from the record and the closing argument to the jury that driving under the influence was the critical evidence upon which the Commonwealth relied to prove wanton conduct justifying conviction for criminal homicide, and it was the high degree of intoxication upon which the Commonwealth relied exclusively to prove the "extreme indifference to human life" element of wanton murder. The Commonwealth so stated in closing argument. According to the prosecutor:

"This would be a manslaughter in the second degree charge if he had a .10 blood alcohol or maybe .15, but when you are three times over the legal limit that ... says to the whole world, the whole community I don't care whether somebody dies, I'm drunk and I'm driving."

The appellant argues that the holding in *Grady v. Corbin* barring a subsequent prosecution for criminal homicide *after* conviction for drunken driving requires us to vacate the criminal homicide prosecution here. But the situation is different when both convictions occur in the *same* trial. Kentucky cases applying the Double Jeopardy Clause to multiple prosecutions in a single trial when there is in fact a single offense also recognize that the rule when applied to two convictions in the same trial requires only that we vacate the lesser offense. This was the holding in all of the cases which we have cited heretofore, *Ingram, Jordan, Jones*, and *Sherley*. Where there is but a single trial, the Double Jeopardy Clause does not foreclose multiple convictions, *per se*, but only judgments imposing multiple punishments, meaning that the judgment punishing on the lesser charge should be set aside.

"The Commonwealth is permitted to carve out of a single criminal episode the most serious offense, but not to punish a single episode as multiple offenses." *Jones v. Commonwealth, supra,* 756 S.W.2d at 463.

Thus we hold the judgment punishing the appellant for driving under the influence (second offense) is the one to be vacated.

Finally, the appellant argues for a new trial claiming the trial court erroneously permitted proof during the guilt phase of the murder trial of a prior drunken driving offense, introduced to prove that he was a subsequent offender. The appellant concedes that this point was not preserved by contemporaneous objection as required by RCr 9.22, but claims he was so prejudiced by the procedure as to constitute denial of due process. We see no basis for this argument, nor do we view it as a palpable error for which a new trial would be a proper remedy for under RCr 10.26.

For the reasons stated, we order the judgment convicting the appellant of driving under the influence (second offense) vacated. The judgment convicting and sentencing the appellant for wanton murder is affirmed.

STEPHENS, C.J., and LAMBERT and VANCE, JJ., concur.

LEIBSON and COMBS, JJ., concur, except as stated in the separate concurring opinion.

WINTERSHEIMER, J., dissents by separate opinion in which GANT, J., joins.

LEIBSON, Justice, concurring in part.

I concur in the portion of the Majority Opinion holding that under the indictment and proof in this case conviction for both driving under the influence and wanton murder violates the double jeopardy principle. But, respectfully, I dissent from the two other major premises in the Majority Opinion. In my view:

1) The trial court's instruction on the statutory presumption in KRS 189.520(3)(c) regarding intoxication prejudiced the appellant's conviction on the wanton murder charge; and

2) The trial court should have directed a verdict of acquittal on the wanton murder charge, limiting the most serious offense for which the appellant could be convicted to involuntary manslaughter.

The Commonwealth *concedes* it was error to permit the jury to hear evidence of the statutory presumption of intoxication in a murder case. Respectfully, I dissent from the view that such evidence was harmless. The proof of its harm lies in the conviction for murder rather than the lesser offense of involuntary manslaughter which would conform much more closely to the proof in this case.

The trial court advised the jury as part of the proof that under the law in Kentucky "there is a presumption that is applied in cases where a person is accused of operating a car under the influence of intoxicants." The trial court told the jury that if a defendant's blood alcohol is more than .10 percent, then "it *shall be presumed* that the defendant was under the influence of intoxicating beverages." [Emphasis added.] The trial court *refused* defense counsel's request for an admonition limiting the jury's consideration of this evidence solely

to the driving under the influence charge. Because the jury was thus *directed* to consider the D.U.I. statutory presumption as evidence in the murder case, in closing argument the prosecutor told the jury "the defendant's blood alcohol was three times drunk." The prosecutor also stated the evidence "which jump[ed] this case from manslaughter in the second degree to murder" was appellant's "extreme level of intoxication." According to the prosecutor, "this would be a manslaughter in the second degree charge if [Walden] had a .10 blood alcohol or maybe .15, but when you are three times over the limit that ... says to the whole world, the whole community I don't care whether somebody dies, I'm drunk and I'm driving."

KRS 189.520 which creates these presumptions expressly restricts their application to cases tried under KRS 189.520(1) or 189A.010 "wherein the defendant is charged with having operated a vehicle while under the influence of intoxicating beverages." The jury may well have concluded that these instructions from the judge removed the question of wanton murder versus involuntary manslaughter from serious debate. Surely, violating the statute's limitation to D.U.I. cases is reversible error in present circumstances.

I turn now to the major difficulty in this case, whether the proof here is sufficient to sustain a conviction for wanton murder.

Where death is caused by wanton conduct the offense is second-degree manslaughter. The additional element that causes such a criminal homicide to be classified as murder is "circumstances manifesting extreme indifference to human life" (KRS 507.020) explained in the Commentary to the Penal Code as *wantonness so extreme it should be assimilated to "intention."* The Model Penal Code, § 210.2, from which our murder statute derives, explains:

"Insofar as subsection (1)(b) includes within the murder category cases of homicide caused by extreme recklessness, though without purpose to kill, it reflects both the common law and much pre-existing statutory treatment usually cast in terms of conduct evidencing a 'depraved heart regardless of human life' or similar words. Examples usually given include shooting into a crowd or into an occupied house or automobile, though they are not, of course, exhaustive."

This case is the result of the erroneous path our Court started down in *Hamilton v. Commonwealth*, Ky., 560 S.W.2d 539 (1978), where we first affirmed a conviction for wanton murder based on drunken driving. Chief Justice Palmore said in his Dissent in *Hamilton:*

"There simply is a difference in culpability between committing an act that endangers people whose presence is known and an act that endangers people whose presence *should be* anticipated but *in fact* is not known.... In keeping with his [O.W. Holmes'] illustration of exploding a barrel of gunpowder in a crowded street, that would be the case in which the guilty party rode or drove heedlessly into a person or persons *known to be in his path or so near to it that he must have realized he would hit somebody.*" [Emphasis added]

These words mirror the Commentary to the offense described in the Model Penal Code from which our Kentucky Penal Code wanton murder offense derives *verbatim.* Following Palmore's Dissent in *Hamilton,* and probably in reaction to it, the General Assembly amended the criminal homicide statutes to make clear that in appropriate circumstances operating a motor vehicle while intoxicated should be treated as murder. In 1984 both our wanton murder statute and our second-degree manslaughter statute were modified to make clear conduct in "the operation of a motor vehicle" is covered by these statutes. But these changes do not abolish the essential elements of, and the difference between, these two offenses. If it were the purpose of the General Assembly to treat drunken driving as murder whenever death results, it should have done so by changing the elements of the offense of wanton murder rather than simply amending the statute to specify that it could occur while operating a motor vehicle. It did not.

These statutory amendments in 1984 do not change the nature of the elements of the wanton murder offense; they do not eliminate the need to prove wanton conduct which is the culpable equivalent of intention, "a 'depraved heart regardless of human life'." Model Penal Code, § 210.2 *supra*.

A person does not, *per se*, have the required *mens rea* for wanton murder because he undertakes to drive a motor vehicle after he has been drinking alcohol passed the point where he is under the influence. He is then not fit to drive, but he does not fit the description of wanton murder absent further circumstances indicating a heedless disregard for victims he is consciously aware of. A drunk who drives heedlessly into people he sees standing on the road in front of him is guilty of the kind of conduct justifying a wanton murder conviction. There is no such evidence here.

The evidence showed the appellant was driving while highly intoxicated and at a high rate of speed. This is wanton conduct sufficient to justify a conviction for second-degree manslaughter, but does it equate to the degree of malice necessary to cross the murder threshold? If the evidence showed that the appellant undertook to drive an automobile when he was consciously aware of and callously indifferent to the fact he was so intoxicated he would cause death to other persons, wanton murder would be an appropriate charge. Here the evidence does not show that Walden got drunk knowing he would have to drive. On the contrary, the uncontradicted evidence is that he initially intended to sober up, to sleep it off, before driving home. Presumably, he got drunk and in that state decided to keep drinking. Drunkenness begets recklessness. But this does not mean that when a person gets drunk, and then makes a decision to drive, murder is the appropriate charge. The elements of second-degree manslaughter, not murder, fit the situation. The difference between the degree of wantonness necessary to commit murder and appropriate to second-degree manslaughter is as the Majority says, "primarily a question of fact for the jury," but it is not exclusively so. At the threshold, the court must determine whether there is evidence from which the jury could infer culpability to a degree equivalent to intentional murder, a "depraved heart," "an awareness of the creation of substantial homicidal risk." *Commentary, supra.* Walden should be retried for criminal homicide subject only to the penalty for second-degree manslaughter. We significantly impair the credibility of our criminal justice system when we treat alike crimes with different degrees of criminal culpability. Second-degree manslaughter is a serious felony but it is not murder, and should not be treated as murder.

In the circumstances of this case the Commonwealth failed to prove "circumstances manifesting extreme indifference to human life." There should be a retrial limited to second-degree manslaughter and lesser included offenses. Further, if thus tried, the reading of the statutory presumptions based on blood alcohol level would be improper because the statute specifies such a procedure only in D.U.I. cases. As evidence in a criminal homicide case it causes a substantial and undue prejudice.

COMBS, J., joins this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from that part of the majority opinion which vacates the conviction of driving under the influence, second offense. I would affirm the judgment of conviction in all respects. I also disagree with the rationale used to arrive at the affirmance because it does not fully state the facts or the law.

Tragically, the majority has irrevocably altered the law of Kentucky concerning double jeopardy by confusing the legal concepts underlying the two differenct terms, subsequent prosecution and multiple punishment.

Double jeopardy is a simple term understood by lawyers and lay people alike. The Kentucky Constitution § 13, in pertinent part, clearly and simply provides that "No

person shall, *for the same offense,* be twice put in jeopardy.'' (Emphasis added.)

Kentucky has long held that there can be different parts of a criminal transaction which are separate offenses and may be separately prosecuted. The rule that a single criminal activity cannot be split into separate offenses is not necessarily applicable if different parts of a continuous criminal transaction or series of acts are separate offenses and can be separately proved. *Newton v. Commonwealth,* 198 Ky. 707, 249 S.W. 1017 (1923). The inherent value of the double jeopardy principle has been extended and elongated and its real meaning has been lost.

The factual analysis of the majority is flawed and insufficient. Walden was charged in connection with an automobile collison which resulted in the death of the other driver. He had previously been convicted of driving under the influence within five years of this incident. The collison occurred at 9:15 a.m. on Saturday; Walden was driving approximately 70 miles per hour in a 35 mile per hour zone. His blood alcohol was .297 percent. He was further impaired in the operation of the vehicle because he had a cast on his leg, and he knew that his vehicle was defective to the extent that it pulled to the right when braking. Walden admitted to having 5 or 6 beers on the night before the accident and one more at a friend's home and stated that he called his wife and told her he was intoxicated and would not drive home. I find hard to believe, as did the jury, Walden's version of his behavior the night before the accident. The majority does detail the drinking habits of Walden but claims that the prosecution was required to elect to prosecute on either murder or DUI. The majority cites no convincing applicable authority.

This case is very similar to *Hamilton v. Commonwealth,* Ky., 560 S.W.2d 539 (1978). The 1984 amendment to K.R.S. 507.020(1)(b) reinforced this Court's decision in *Hamilton, supra,* regarding wanton murder by inserting "including, but not limited to, the operation of a motor vehicle." The question of extreme indiffer-

ence to human life to distinguish wanton murder from second-degree manslaughter is primarily a question of fact for the jury. *Nichols v. Commonwealth,* Ky., 657 S.W.2d 932 (1983). The evidence in this case was sufficient to prove the necessary factors indicating extreme indifference to human life.

Instead of accepting the clear mandate of *Hamilton,* the majority seeks refuge in a dissenting opinion. Building on such a shallow foundation, the majority presumes to unilaterally declare and determine the legislative intent by judicial interpretation without reference to any legislative history. The effect of the twisted language and tortured logic of the majority is to seriously weaken the so-called "Slammer Bill" directed at punishing drunken driving. The legislature and the people understand that the purpose of the statute is to reduce or prevent the national and state tragedy of drunk driving. The reasoning of the limited affirmance permitted by the majority is shrewdly framed to support the view which vacates the DUI conviction.

The most serious error in the majority opinion arises in regard to the double jeopardy issue.

The trial judge did not violate the double jeopardy protection afforded to Walden by permitting a conviction of both wanton murder and of operating a motor vehicle under the influence of an intoxicant. Homicide and DUI are not the same offense so as to be barred by double jeopardy. *See, Keller v. Commonwealth,* Ky. App., 719 S.W.2d 5 (1986); *Commonwealth v. Barnhill,* Ky.App., 552 S.W.2d 241 (1977).

Contrary to the majority statement, the facts of *Grady v. Corbin,* 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) are *not* at all similar to this case. Here Walden was found guilty of wanton murder and operating a motor vehicle while under the influence of alcohol (second offense) in violation of K.R.S. 507.020(1)(b) and K.R.S. 189A.010, respectively. In *Grady, supra,* the defendant was charged with a misdemeanor of driving while intoxicated and also charged with failing to keep to the

right of the median. Corbin's automobile struck an oncoming vehicle on a New York highway causing the death of one person and injury to another. He was served with two uniform traffic tickets directing him to appear in a local court. Corbin pled guilty to the traffic tickets and the presiding judge was not informed of the fatality or a pending homicide investigation. Subsequently, a grand jury indicted Corbin charging him with, among other things, reckless manslaughter, criminally negligent homicide and third-degree reckless assault. Corbin moved to dismiss the indictment on constitutional double jeopardy grounds which was denied by the local court; he then sought a writ of prohibition barring prosecution which was also denied by the appellate division. However, the state Court of Appeals of New York, the New York court of last resort, reversed finding that the state's intention to rely on prior traffic offenses as acts necessary to prove the homicide and assault charge violated the U.S. Supreme Court's dicta in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) suggesting if two *successive* prosecutions were not barred by the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 3067 (1932) the second prosecution would be prevented if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution.

A seriously divided U.S. Supreme Court in one of the last opinions written by Justice Brennan held that the double jeopardy clause bars a subsequent prosecution if to establish an essential element of an offense charged in that prosecution, the government will prove conduct which constitutes an offense for which the defendant had already been prosecuted. The U.S. Supreme Court adopted the dicta of *Vitale*, *supra*.

The U.S. Supreme Court states in part that the double jeopardy clause of the federal constitution protects against a second prosecution for the same offense after acquittal and against a second prosecution for the same offense after conviction and also protects against multiple punishments for the same offense. It admits that *Blockburger*, *supra*, was developed in the context of multiple punishments imposed in a single prosecution.

In *Grady*, the defendant quickly pled guilty to the misdemeanor charge and then skillfully interposed the defense of double jeopardy to a subsequent but more serious charge of manslaughter and negligent homicide. When the defendant pled guilty to the traffic tickets, no member of the district attorney's office was present in court and the presiding judge was totally unaware of the fatality involved in the accident. He was never asked and did not voluntarily incriminate himself by providing such information. Two months later, the matter was presented to the grand jury and the defendant was charged with the more serious crimes.

Justice Brennan laments the unfortunate lapse of an orderly prosecutorial procedure caused in part by the enormous increase in workload and often understaffed prosecutors' offices. He concludes that this may explain the situation but does not excuse it. He further observes that drunk driving is a national tragedy but that does not excuse the need for scrupulous adherence to constitutional principles. Certainly such an announcement is looked upon with favor by any reasonable person. The most interesting statement by Justice Brennan writing for the majority is as follows, —— U.S. at ——, 110 S.Ct. at 2094, 109 L.Ed.2d at 566:

> With adequate preparation and foresight, the state could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in *a single proceeding, thereby avoiding this double jeopardy question.* (Emphasis added.)

In this Kentucky case the prosecutor did exactly what was suggested by the United States Supreme Court and combined both the murder and the DUI charges in a single proceeding. The majority opinion conveniently ignores the explanatory statement of *Grady*.

Let us now return to an analysis of whether Kentucky law and the Kentucky Constitution prevent the type of prosecution that was undertaken in this case.

First it must be observed that the double jeopardy clause of the United States Constitution was made applicable to the states by the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

As I stated in my dissent in *Ingram v. Commonwealth,* rendered December 27, 1990, the test for determining whether one act can be two charges is found in *Blockburger, supra.* This standard was developed in the context of multiple punishments imposed in a single prosecution. It has been used for almost 60 years in considering federal as well as state criminal matters. Many crimes have a universal and generic background which is common to all states. The mere fact that the statutory language prohibiting certain conduct designated as criminal may vary from state to state does not change the underlying criminal offense. The rationale of *Blockburger, supra,* and the cases following it are persuasive to any logical person who considers the impact of the crime on the victim as well as the accused.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, provides in part:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

Interestingly enough, the majority in *Ingram* said that the U.S. Supreme Court has not supplemented the *Blockburger* standard when the issue is multiple punishment imposed in a single trial. The *Ingram* majority also asserted that the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the *legislature intended.*

Kentucky has long followed the same reasoning as set forth in *Blockburger* and subsequent federal cases. *See Wilson v. Commonwealth,* Ky., 695 S.W.2d 854 (1985); *Polk v. Commonwealth,* Ky., 679 S.W.2d 231 (1984). *Wilson, supra,* states that the test focuses on the proof necessary to prove the statutory elements of each offense and that we must determine the minimum facts necessary to establish a completed offense under each statute and determine if an additional fact must be proved for each completed offense.

The revered Wharton treatise on criminal law indicates that the fifth amendment to the federal constitution has many state constitutional provisions which are comparable and clearly states that the notion of former jeopardy has its basis on the philosophy that "no person shall be subject for the same offense to be twice put in jeopardy." § *Wharton's Criminal Law* (14th ed. Vol. 1, p. 274). Wharton further expresses the view that the federal provision is applicable and binding on the states through the Fourteenth Amendment. The underlying idea of the protection from double jeopardy is a restraint on courts and prosecutors. "The legislature remains free ... to define crimes and fix punishments; but once the legislature has acted, courts may not impose more than one punishment for the same offense, and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." § 54, p. 276 of *Wharton's.*

It is a fundamental and universal principle of criminal law that no person is to be placed in jeopardy twice for the same offense. The rule that a single act or criminal transaction cannot be split into separate offenses, does not apply where a single criminal act is common to two offenses but each contains additional elements not common to the other. To hold otherwise, gives the criminal a disincentive to discontinue his criminal activity when that is possible.

I would affirm the conviction and sentences in all respects.

GANT, J., joins in this dissent.