Tammy Sullivan ESTEP, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 96–SC–0083–MR.

Supreme Court of Kentucky.

Sept. 4, 1997.

Rehearing Denied Jan. 22, 1998.

C. Tom Anderson, Boehl, Stopher &
Graves, Prestonsburg, Lawrence R. Webster,
Pikeville, for Appellant.

A.B. Chandler, III, Attorney General, Michael Harned, Assistant Attorney General,
Criminal Appellate Division, Frankfort, for
Appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Estep of wanton murder and first-degree assault. She was sentenced to 20 years for the wanton murder and ten years for the assault with the sentences to run concurrently.

The principal issue is whether there was sufficient evidence for the jury to find Estep guilty of wanton murder. Other questions presented are whether the trial court properly exercised its discretion in refusing a continuance; whether it was error to allow the videotaped deposition of a prosecution expert and whether there was reversible error in admitting a urinalysis report.

Estep was charged with wanton murder and assault as the result of a fatal automobile accident on a two-lane road in Pike County. Testimony at trial indicated that the blue pickup truck driven by Estep passed a witness who was driving about 50 miles per hour. The pickup truck crossed the double-lined no passing zone and did not return to the right side of the road after passing the witness. The pickup truck collided head-on with a car traveling in the opposite direction. Evidence was presented that Estep was found to have five different prescription drugs in her system, three of which were found to be within proper therapeutic levels and the other two were at levels less than therapeutic quantities. This appeal followed the judgment of conviction.

The principal issue is whether there was sufficient evidence for the jury to find Estep guilty of wanton murder. She argues that there was no evidence that she was aware of and consciously disregarded the risk that taking the various drugs would impair her ability to drive. She testified that no doctor had told her not to take these drugs in combination and that she did not know the effect of these drugs together.

Estep also testified that she was well aware of the debilitating effects of these drugs. She stated that she did not take Elavil if she was home alone because it produced too deep a sleep and she was afraid that someone might break into her house and that she would not be aware of it. She further testified that she would not take Dilantin if she was by herself.

At trial, a hospital nurse testified that Estep told the nurse that she was not on any sort of medication. However, the nurse discovered a handful of Soma and Xanax tablets in her pants pocket. The nurse testified that she had to rouse Estep in order to ask some questions and that Estep appeared sedated and that she kept falling asleep. Fifty-eight Xanax tablets were found in Estep's purse.

KRS 507.020(1)(b) permits a conviction for wanton murder for the operation of a motor vehicle under circumstances manifesting extreme indifference to human life. *Johnson v. Commonwealth,* Ky., 885 S.W.2d 951 (1994). The prosecution charged that conduct such as Estep's has been held to constitute wanton murder under such a statutory standard. *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991), held that a wanton murder conviction was proper because the conduct of the defendant amounted to more than a typical automobile accident by virtue of the extreme rate of speed and level of intoxication. *See also Hamilton v. Commonwealth,* Ky., 560 S.W.2d 539 (1978). *Burnett v. Commonwealth,* Ky., 284 S.W.2d 654 (1955), recognized that intoxication may be caused by either drugs or alcohol. In this case, there was no evidence of alcohol.

In *Walden,* this Court distinguished between the wanton state of mind applicable to wanton murder and the state of mind applicable to second-degree manslaughter. The difference between wanton murder and second-degree manslaughter, involuntary murder, continues to be, as the penal code originally intended, where there is evidence from which the jury could find circumstances manifesting extreme indifference to human life. *Walden, supra,* at 105. Depending on the situation, drunk driving may be such a circumstance. *Id.* Indicative of its view of what the law requires, this Court concluded that applying this rule to the circumstances of that case, that the extreme nature of the intoxication was sufficient evidence from which a jury could infer wantonness so extreme as to manifest extreme indifference to human life. *Id.*

The evidence in this case demonstrated that Estep was driving her truck at a high rate of speed in an improper manner under the influence of drugs. Blood tests revealed the existence of five different types of drugs in Estep's body: Xanax, Elavil, Soma, Valium and Hydrocodone. Expert testimony established that Soma and Xanax are types of sedatives which tend to slow down the nervous system. Elavil is used to treat depression. Valium is a muscle relaxant which causes sleepiness and drowsiness. Hydrocodone is a narcotic analgesic pain reliever in the same class of drugs as morphine and heroin.

There was sufficient evidence for the jury to determine that these substances impaired Estep's ability to operate an automobile. Dr. Hunsaker, a prosecution expert witness, testified and described the effects of each of the substances. He testified that he could state with reasonable medical probability that given the presence of these drugs at the levels they were found in Estep's system, that their effect would be to cause impairment in operating a motor vehicle.

■ Eyewitnesses testified that Estep was seen passing at a rate of speed greater than 50 miles per hour in a no-passing zone near a curve in the road. The testimony indicated that after she completed passing one automobile, she failed to return to the proper lane and collided with a car on the wrong side of the road. One of the passengers in the other vehicle testified that she noticed Estep was slumped over in her seat and that she raised her head only seconds before the fatal crash. There was evidence that when Estep was taken to the hospital for observation following the accident that she kept passing out and appeared "pretty zonked." There was sufficient evidence that Estep was operating a motor vehicle under circumstances manifesting extreme indifference to human life and she wantonly engaged in conduct which created a grave risk of death and caused the death of another person. KRS 507.020(1)(b). Her behavior was wanton as defined by KRS 501.020(3).

■ The jury was well within its authority to find Estep guilty of wanton murder. There was no basis for a directed verdict because the evidence was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant was guilty. On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. The questions of credibility and weight of the evidence are jury matters. *See Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991). A careful review of the evidence indicates that the trial judge correctly determined that a reasonable juror could fairly find beyond a reasonable doubt that Estep wantonly caused the death. *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983).

■ Next, we consider the claim by Estep that she was entitled to a continuance because the scientific "meat" of the prosecution's case was never provided to her prior to the testimony of Dr. Hunsaker. Estep was present at Dr. Hunsaker's deposition and heard him list the drugs found in her system and describe the effects of the various drugs. Counsel for Estep cross-examined Dr. Hunsaker concerning the effects of taking the drugs over a long period of time and the effects of taking the various drugs in combination. Estep cannot now claim that she was unaware of the scientific "meat" of the prosecution's case. Considering all the circumstances, we do not believe that the trial judge abused his discretion in refusing to grant a request for continuance. RCr 9.04; *Dishman v. Commonwealth*, Ky., 906 S.W.2d 335 (1995).

■ Estep also contends that the trial judge committed reversible error in permitting the prosecution to introduce the testimony of Dr. Hunsaker by means of a videotaped deposition. The record contains an agreed order which states in part "said deposition to be read and used as evidence at the trial of this action." Estep agreed prior to trial that Dr. Hunsaker's deposition could be used as evidence and she cannot now complain.

■ Finally, Estep claims that the trial judge committed error in allowing the prosecution to introduce a urinalysis report which indicated the presence of marijuana in her system. The trial judge did not abuse his discretion in admitting the urinalysis report.

A trial judge has considerable discretion in making a determination regarding the admissibility of any particular piece of evidence and such determination will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. *Simpson v. Commonwealth*, Ky., 889 S.W.2d 781 (1994). Here there is no such indication of an abuse of discretion. The theory of the prosecution was that Estep constantly took drugs in order to feel good. Estep admitted that she and a friend would sit around the house and smoke marijuana in order to "try to enjoy a little bit of life." In order to support its theory, the prosecution introduced evidence of various drugs found in her system. The Commonwealth maintained that the effect of these various drugs impaired her ability to drive a motor vehicle and resulted in the fatal accident. Evidence that marijuana was present in her system was relevant to such a theory. The trial judge did not abuse his discretion in admitting such evidence.

In the circumstances presented here in which there was sufficient evidence that five different types of drugs were found in the system of the accused and that there was evidence that the effects of each of these substances would cause impairment in the operation of a motor vehicle, a jury could reasonably find that wanton murder had occurred.

The judgment of conviction is affirmed.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion in which STUMBO, J., joins.

LAMBERT, Justice, dissenting.

By virtue of the majority opinion in this case, I fear the distinction between wanton murder and reckless homicide will be lost. Under this decision, whenever there is evidence of misconduct in the operation of a motor vehicle exceeding ordinary negligence, the Commonwealth will be entitled to go to the jury on wanton murder.

The culpable mental state for wanton murder is wantonly engaging in conduct which creates a grave risk of death to another person. KRS 507.020(1)(b). For reckless homicide, the culpable mental state is recklessness. KRS 507.050. KRS 501.020 defines these mental states as follows:

(3) "Wantonly"—A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto. (4) "Recklessly"—a person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

In this case, the accident occurred in the morning while appellant was en route to a doctor's appointment. At an excessive rate of speed, and on a double yellow line, she passed another vehicle and upon rounding a curve, hit the victims head-on in their lane. Of the three occupants of the other vehicle, one person died, one was seriously injured, and the other was essentially unharmed.

There was some evidence of erratic behavior by appellant at the accident scene but none which was particularly probative in view of the horrific collision which had just occurred. At the hospital appellant was found to have in her system five different prescription drugs, Xanax, Elavil, Soma, Valium and Hydrocodone. Three of the drugs found to be present were within proper therapeutic levels and the other two were at levels less than therapeutic quantities.

The Commonwealth's theory was that appellant engaged in wanton conduct by ingesting drugs and in such a condition, driving an automobile. While Dr. Hunsaker opined that the presence of such drugs and in the quantities found would cause impairment of one's ability to operate a motor vehicle, there was

no evidence that appellant knew of the effects of such drug combinations. As to such drug combination effects, even Dr. Hunsaker was uncertain in his opinion, "She appeared to be under the influence of something." He acknowledged that physicians and pharmacists have a duty to inform the public of the risks associated with drug interaction. Appellant contends the Commonwealth failed to prove wantonness as defined in KRS 501.020 which requires that she be "aware of and consciously disregards a substantial and unjustifiable risk that the result will occur. . . ."

Our most recent encounter with this area of law was in *Johnson v. Commonwealth*, Ky., 885 S.W.2d 951 (1994), a case arising out of an accident in which a coal truck struck a vehicle entering the highway and killed the occupant. We reversed the wanton murder conviction on grounds of insufficiency of evidence and remanded for a new trial upon lesser included offenses. Both parties here contend that the *Johnson* case supports their position. We affirmed a wanton murder conviction in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991), where appellant's blood alcohol sample tested at .297. From the evidence, Walden operated his van on a two-lane country road in Madison County at a high rate of speed in this profoundly intoxicated condition. In a thorough discussion, the Court distinguished between the wanton state of mind applicable to wanton murder and the state of mind applicable to manslaughter in the second degree. "The difference between wanton murder and involuntary murder (manslaughter 2) continues to be, as the penal code originally intended, where there is evidence from which the jury could find 'circumstances manifesting extreme indifference to human life.' Depending on the situation, drunk driving may be such a circumstance." *Id.* at 105. Indicative of its view of what the law requires for wanton murder, the *Walden* Court concluded its analysis of this issue as follows: "Applying this rule to present circumstances, we hold that here the *extreme* nature of appellant's intoxication was sufficient evidence from which a jury could infer wantonness so *extreme* as to manifest *extreme* indifference to human life." (Emphasis added.) *Id.*

Despite appellant's serious driving misconduct and the evidence from which the jury could have believed that she was impaired, I cannot conclude that her conduct satisfies the high standard required for wanton murder. At a minimum, there had to be evidence that she knew of and disregarded the risk of taking the combination of drugs found in her system. The law presumes that persons know the significance of ingestion of alcohol and treats each such person as if he had actual knowledge (KRS 501.020(3)). The same cannot be said with respect to the ingestion of prescription drugs within therapeutic levels.

STUMBO, J., joins this dissenting opinion.