**Thomas BERRYMAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2006–SC–000229–MR.**

Supreme Court of Kentucky.

Nov. 1, 2007.

Joseph Brandon Pigg, Assistant Public Defender, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

Thomas Berryman filed this appeal as a matter of right[1] from his convictions for wanton murder and assault in the first degree for which he was sentenced to a total of forty-five years' imprisonment. Berryman raises two issues. First, he contends that the trial court erred by denying his motion for a directed verdict. Second, he contends that the trial court erred by failing to grant his motion to exclude evidence regarding illicit pills. We reject both arguments and, consequently, affirm.

## I.  FACTS AND PROCEDURAL HISTORY.

Berryman and a friend, Michael Dunn, retrieved a package from a UPS hub in Stanton, Kentucky. That package contained Lortab pills, which Dunn admitted purchasing on the internet without a prescription. After retrieving the package, Berryman, accompanied by Dunn, was traveling on the Mountain Parkway in Clark County when their vehicle struck the vehicle occupied by Charles and Angela Deaton. Angela Deaton suffered serious injuries in the collision. Charles Deaton died.

Berryman was indicted for wanton murder, assault in the first degree, one count of possession of a controlled substance in the second degree, and one count of possession of a controlled substance in the third degree. The trial court granted Berryman's motion to sever the controlled substance charges. The assault and murder charges proceeded to trial.

At trial, the Commonwealth introduced testimony that Berryman was driving his vehicle at approximately ninety-eight miles per hour at the time of the collision. Furthermore, two witnesses observed that Berryman appeared to be preoccupied with something in the center or passenger

---

1.  *See* Ky. Const. § 110(2)(b).

area of the car shortly before the accident. Dunn testified that at the time of the collision, he was counting Lortab pills in the front seat of the vehicle while simultaneously conversing with Berryman about a future package. Dunn further testified that he saw the Deatons' vehicle ahead on the parkway while Berryman's vehicle was passing a third vehicle but that Berryman made no effort to apply the brakes before colliding with the Deatons' vehicle. Dunn also testified that Berryman asked him to tell the police that he, not Berryman, was driving the vehicle and that he initially complied with Berryman's request but, ultimately, told the police that Berryman was the driver.

The jury found Berryman guilty of wanton murder and of assault in the first degree. Consistent with the jury's recommendations, the trial court sentenced Berryman to thirty years' imprisonment for the murder conviction and fifteen years' imprisonment for the assault conviction, with those convictions ordered to be served consecutively, for a total sentence of forty-five years' imprisonment. This appeal followed.

## II. *ANALYSIS.*

A. *The Trial Court Properly Denied Berryman's Motion for a Directed Verdict.*

■ Berryman contends that his conduct cannot constitute wantonness. Thus, according to Berryman, since wanton conduct is an essential element of wanton murder and first-degree assault, the trial court erred in denying his motion for a directed verdict. But because we find that there was sufficient evidence for a reasonable juror to find Berryman guilty of engaging in wanton conduct, we affirm the trial court's decision to deny Berryman's motion for a directed verdict.

■ The familiar standard for ruling on a motion for directed verdict is as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[2]

In order to convict Berryman of wanton murder, the Commonwealth was required to prove that Berryman "operat[ed] ... a motor vehicle under circumstances manifesting extreme indifference to human life, [and] ... wantonly engage[d] in conduct which create[d] a grave risk of death to another person and thereby cause[d] the death of another person."[3] Similarly, in order to convict Berryman of assault in the first degree, the Commonwealth was required to show that "[u]nder circumstances manifesting extreme indifference to the value of human life [Berryman] wantonly engage[d] in conduct which create[d] a grave risk of death to another and thereby cause[d] serious physical injury to another

**2.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

**3.** Kentucky Revised Statutes (KRS) 507.020(1)(b).

person."[4] So each charge required the Commonwealth to prove that Berryman acted wantonly.

The General Assembly has provided that "[a] person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[5] We must examine the evidence to determine if the Commonwealth adduced sufficient evidence to meet the requisite level of wantonness necessary to convict a defendant of murder and first-degree assault.

When all of the evidence in the case at hand is considered in its totality and all reasonable inferences are drawn in favor of the Commonwealth, it is clear that the trial court properly denied Berryman's motion for a directed verdict. The evidence in this case showed that Berryman (1) drove at an alarmingly high rate of speed; (2) ignored the conditions of the road and other vehicles ahead; (3) made no effort to brake or swerve before overtaking and ramming the Deatons' vehicle, even though the Deatons' vehicle was visible; and (4) had traces of Xanax in his system.[6] Berryman's egregious misconduct is obviously evidence of more than just a driver who had an accident while speeding and not paying close attention to the road. Instead, Berryman's tragic misconduct clearly manifests an extreme indifference to human life.

We reject Berryman's contention that his conduct is less egregious than that in the similar case of *Brown v. Commonwealth*,[7] a case in which we found that the trial court properly denied a directed verdict on wanton murder. In *Brown*, a driver was convicted of wanton murder under facts showing that the driver was speeding, may have been watching a television while driving, consciously ran through a red light, and failed to apply his brakes before colliding with another vehicle.[8] Among the issues on appeal was Brown's contention that his conduct could not be found to have been wanton. We disagreed, holding that it was not unreasonable as a matter of law for a jury to find that Brown's misconduct rose to the level necessary to constitute wanton murder.[9]

■ Contrary to Berryman's arguments, this case is similar to *Brown*. In many important ways, Berryman's misconduct is more egregious than Brown's. Both cases involve a driver who was inattentive to the road. Brown's inattention involved watching television; Berryman's involved monitoring the counting of his illegal drug shipment. Both cases involve defendants who were speeding. But Ber-

---

4.   KRS 508.010(1)(b).

5.   KRS 501.020(3).

6.   Although a chemist who testified was unable to state conclusively whether the Xanax in Berryman's system did or did not impair Berryman, on a motion for directed verdict, the finder of fact would be permitted to draw a reasonable inference that the Xanax did, in fact, impair Berryman's ability to operate a motor vehicle in a safe, lawful manner.

7.   174 S.W.3d 421 (Ky.2005).

8.   *Id.* at 424–25.

9.   *Id.* at 428 ("While the evidence was by no means overwhelming on these points, we cannot say as a matter of law that it was unreasonable for the jury to believe beyond a reasonable doubt that Appellant acted under circumstances manifesting extreme indifference to human life.").

ryman was exceeding the speed limit by over thirty miles per hour; Brown was exceeding the speed limit by only between five and fifteen miles per hour. And there is no indication that Brown was impaired to any degree by alcohol or other intoxicants. A reasonable inference could be drawn that Berryman was impaired, at least somewhat, by the Xanax in his system.[10] Thus, in many important respects, the facts in this case contain even stronger evidence of wanton conduct than that found in *Brown*.

Likewise, we reject Berryman's alternate contention that *Brown* was incorrectly decided. To the contrary, we find that *Brown* properly analyzed and applied both our precedent and the relevant statutory provisions enacted by the General Assembly. Thus, because *Brown* was correctly decided and the facts in this case demonstrate even stronger evidence of wanton conduct, we decline Berryman's invitation to overrule *Brown*.

Accordingly, we reject Berryman's contention that he was entitled to a directed verdict on the murder and assault charges.

B. *The Trial Court Did Not Err When it Permitted the Commonwealth to Introduce Evidence Regarding the Lortab Pills.*

■ Berryman repeatedly requested that the trial court exclude evidence of the contents of the package that he and Dunn picked up at the UPS hub in Stanton. On appeal, he contends that the trial court's failure to exclude that evidence constituted reversible error because the evidence was irrelevant. We disagree.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[11] All relevant evidence is admissible;[12] however, relevant evidence may, nonetheless, be excluded "if its probative value is substantially outweighed by the danger of undue prejudice...."[13] Because "determinations as to the relevance and admissibility of evidence are left to the sound discretion of the trial court[,]" we may reverse a trial court's decision to exclude or admit evidence only "after a finding that the decision amounted to an abuse of discretion."[14]

Although the drug-related charges against Berryman had been severed, the evidence about the drugs was still relevant to prove that Berryman's conduct rose to the level of wantonness necessary for murder and assault in the first-degree convictions. A reasonable juror could have found that Berryman's conduct was more culpable because he was watching Dunn divvy up illicit pills than if Berryman had been distracted by something more benign, such as briefly taking his eyes off the road to change the station on the radio. Although the fact that Berryman, apparently, was engrossed by Dunn's counting of illicit pills surely was prejudicial, the jury was entitled to be aware of the full spectrum of Berryman's misconduct so that it could make the difficult determination of whether Berryman's misconduct constituted wanton murder and/or first-degree assault or whether that misconduct constituted a lesser-included offense, such

10. Of course, "intoxication is not a prerequisite to a finding of extreme indifference to human life in a vehicular homicide case." *Id.* at 426.

11. Kentucky Rules of Evidence (KRE) 401.

12. KRE 402.

13. KRE 403.

14. *Johnson v. Commonwealth,* 184 S.W.3d 544, 551 (Ky.2005).

as reckless homicide or fourth-degree assault.[15] Only a juror possessed with full knowledge of the circumstances surrounding the tragic collision could have made the requisite determinations as to the proper degree of culpability for Berryman's misconduct.

The trial court mitigated any undue prejudice Berryman may have suffered by granting his request for an admonition to the jury. The trial court admonished the jury that the evidence involving drugs was only to be considered to the extent it reflected upon Berryman's operation of the vehicle. A jury is presumed to follow an admonition;[16] and Berryman has pointed to nothing to show that the jury in the case at hand could not, or did not, follow the trial court's limiting admonition.

Accordingly, we find that the trial court did not abuse its discretion when it ruled that the Lortab-related evidence was admissible.

### III. *CONCLUSION.*

For the foregoing reasons, Thomas Berryman's murder and assault convictions are affirmed.

All sitting. LAMBERT, CJ.; ABRAMSON, CUNNINGHAM, NOBLE, and SCOTT, JJ., concur. SCOTT, J., also concurs in the majority's opinion as to the issue of wantonness for reasons that the evidence in this case was sufficient to show intoxication, something that was not present in *Brown v. Commonwealth,* 174

S.W.3d 421 (Ky.2005), to which he dissented. He also concurs in the admissibility of the evidence regarding the counting of the Lortab pills.

SCHRODER, J., dissents by separate opinion.

Dissenting Opinion by Justice SCHRODER.

I would reverse and remand for a new trial. The primary issue in this case is whether the conduct amounted to wanton conduct manifesting an extreme indifference to human life to support both convictions. The conduct in question was the speeding in violation of a statute, plus his multitasking, the counting of pills[1] or fidgeting with the radio.[2] Prior to the adoption of our current penal code, a vehicular wreck resulting in a death produced no such convictions. *Hamilton v. Commonwealth,* 560 S.W.2d 539, 542 (Ky.1977). Under our current penal code, speeding *combined* with intoxication has been considered wanton conduct under circumstances manifesting extreme indifference to human life, which elevates the conduct to murder. *Id.* The *Hamilton* Court actually commended the legislature for enacting KRS 507.020(1)(b) to deter driving under the influence of intoxicants. *Id.* at 544. Thus, the *Hamilton* Court did not consider the speeding alone to be wanton conduct to support a murder conviction.

The cases since *Hamilton* (save two) also required *intoxication* in addition to speeding to sustain a conviction. *Brown v.*

---

**15.** As to Charles Deaton's death, the jury was instructed on wanton murder, second-degree manslaughter, and reckless homicide. As to Angela Deaton's injuries, the jury was instructed on assault in the first degree, assault in the second degree, and assault in the fourth degree.

**16.** *See, e.g., Tamme v. Commonwealth,* 973 S.W.2d 13, 26 (Ky.1998).

**1.** The passenger, Michael Dunn, said Berryman was keeping track of his counting of the pills.

**2.** Another witness, Ms. Music, believed they "were fiddling with the radio or something."

*Commonwealth,* 174 S.W.3d 421, 426 (Ky. 2005) *cert. denied,* 547 U.S. 1115, 126 S.Ct. 1915, 164 L.Ed.2d 669 (2006). In *Walden v. Commonwealth,* 805 S.W.2d 102 (Ky. 1991), *overruled on other grounds by Commonwealth v. Burge,* 947 S.W.2d 805 (Ky. 1996), the defendant blew a .297 on the BA. The Court recognized:

> Whatever the legislative view might have been of the elements of wanton murder in 1974 when the Penal Code was enacted, this view of legislative intention is dispelled by an Amendment in 1984, enacted as part of the so-called "Slammer Bill" directed at drunk driving. The 1984 Amendment adds to KRS 507.020(1)(b) by specifying as a prefatory phrase, "including, but not limited to, the operation of a motor vehicle...."

*Id.* at 104. And,

> [T]he 1984 Amendment declares legislative intent to include vehicular homicide as *potentially* serious enough to justify a murder conviction, but it does *not* change the essential nature of the elements of the offense. Wanton murder continues to be distinguished from second-degree manslaughter, KRS 507.040, which also punishes "wantonly caus[ing] the death of another person," by the additional element described in the phrase, "under circumstances manifesting extreme indifference to human life" .... The difference between wanton murder and involuntary manslaughter (Manslaughter II) continues to be, as the Penal Code originally intended, whether there is evidence from which the jury could find "circumstances manifesting extreme indifference to human life." Depending on the situation, drunk driving may be such a circumstance.

*Id.* at 104–05.

*Johnson v. Commonwealth,* 885 S.W.2d 951, 952 (Ky.1994), reversed a wanton murder conviction that arose from a motor vehicle accident wherein the defendant "was not operating his coal truck under the influence of alcohol or drugs." Possibly running a red light, a traffic offense, without intoxication, did "not rise to such a level of wanton conduct." *Id.*

One of the first cases to not require intoxication in addition to a vehicle wreck was *Graves v. Commonwealth,* 17 S.W.3d 858 (Ky.2000), which involved a high speed chase at upwards of over 100 miles per hour, in a thirty-five mile per hour zone, with an exchange of gunfire, trying to recover drugs for which they had just paid $27,000.00. Driving through a red light, the lead vehicle broadsided a vehicle with two occupants, killing both. The driver, Graves, was convicted of two counts of wanton murder together with other lesser charges. The Court likened the wanton murder charges to the old "felony murder" rule and opined that trafficking in a controlled substance was the main event and the chase, wreck, and death were all part of the main event. *Id.* at 862.

The other case that did not require intoxication in addition to a vehicle wreck to find wanton murder was *Brown,* 174 S.W.3d 421. *Brown* involved a vehicular wreck resulting in multiple deaths and injuries. The facts revealed no intoxication but what has been referred to as "aggravated wantonness." *Id.,* at 426. Brown was speeding—possibly racing—intentionally ran a red light and was watching TV on a gearshift-mounted monitor. Justice Cooper, in writing the Court's opinion, stated that "intoxication is not a prerequisite to a finding of extreme indifference to human life in a vehicular homicide case," *id.,* and the "[a]ppellant's conduct was substantially more than a mere traffic violation." *Id.* at 428. Under the circumstances of this case, the Court would not rule "as a matter of law that it was unreasonable for the jury to believe beyond a

reasonable doubt that [a]ppellant acted under circumstances manifesting extreme indifference to human life." *Id.* (citations omitted). Although *Brown* involved multiple deaths and injuries in the use of a motor vehicle, the "aggravated wantonness" elevated the conduct to near-intentional conduct.

In the case herein, we are asked to consider whether speeding (a traffic offense), combined with mere inattentiveness, may also be wanton murder, "circumstances manifesting extreme indifference to human life." I think not. It took an act of the General Assembly to elevate intoxication to an aggravating element of wanton murder. At this time, I see no evidence of the General Assembly's elevation of inattentiveness while speeding to wanton conduct. As the statistics come out on the number of accidents caused by multitasking while driving, the General Assembly may or may not want to address the issue.[3] That is their prerogative. But for now, I believe that the trial court erred in not granting a directed verdict as to the offense of wanton murder. *See Johnson,* 885 S.W.2d at 953. I would remand for a new trial on the *lesser* offenses.

First-degree assault, under KRS 508.010(1)(b), also requires intentional or "wanton" conduct—"[u]nder circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." My analysis of "wanton" conduct in wanton murder would apply to first-degree assault by wanton conduct. Therefore, the trial court should also have directed a verdict for the Appellant on this charge, and it too should be necessary to remand for a new trial on the lesser offenses.

Berryman also argues that reference to the package and the contents of the package was inadmissible under KRE 402 and KRE 403. Obviously, Berryman was distracted while speeding. Counting the pills probably contributed to the wreck. That is for the jury to decide. Under KRE 402, the evidence was relevant and admissible to show his multitasking—to show that it was not his speeding alone that may have caused the wreck.

KRE 403 excludes relevant, otherwise admissible, evidence if the probative value is substantially outweighed by the danger of undue prejudice. Berryman did not have Lortabs (hydrocodone) in his system. Clearly, when the jury was told or allowed to speculate that Berryman was either a drug dealer or user who had a wreck, the *object* of his distraction became magnified and overshadowed his *conduct.* The jury should have focused on his conduct—counting the pills—rather than the illegal nature of the object being counted. The jury would no doubt have had a different opinion if vitamins, aspirins, or some prescription drugs were being counted, or if he had been tuning the radio, etc. Applying KRE 402, it was important and admissible that Berryman was watching the counting of some pills while speeding. However, references to the pills as being illegal or obtained without a prescription should have been excluded under KRE 403. Even a trip to Stanton to pick up a package was admissible under KRE 402, but references to the specific drug name or its illegal possession should have been excluded under KRE 403.

---

**3.** For example, multitasking could include putting in a CD, dialing a phone, or even text messaging.