Charles OSBORNE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–CA–1631–MR.

Court of Appeals of Kentucky.

Nov. 19, 1993.

Motion to Depublish Opinion Denied Dec. 27, 1993.

Susan J. Balliet, Louisville, for appellant.

Chris Gorman, Com. Atty., Sharon Kay Hilborn, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

Before LESTER, C.J. and HUDDLESTON and McDONALD, JJ.

*OPINION*

McDONALD, Judge.

A fatal car accident occurred on May 6, 1991, on U.S. 119 in Letcher County, Kentucky. The vehicle, traveling at a high rate of speed, skidded out of control, violently struck a utility pole on the passenger side, severed the pole and crashed into the Cumberland River. Freddie Thompson received multiple injuries as a result of the accident and was pronounced dead at the scene. Charles Osborne, the appellant, was indicted on June 27, 1991. The indictment charged Osborne with second-degree manslaughter, driving under the influence (DUI), operating a motor vehicle without liability insurance and operating a vehicle without proper registration plates. Following a jury trial, Osborne was found guilty on each charge. Osborne was sentenced to serve eight (8) years in prison on the manslaughter conviction and he received a six (6)–month sentence on the DUI charge. The sentences were ordered to be served concurrently. Osborne was also fined a total of $1,350.

Having reviewed the record we are persuaded to vacate the judgment and grant Osborne a new trial. Because the case is subject to a new trial, we are put to the task of fully discussing all of the issues on appeal.

■ Osborne's first argument on appeal contends that he was entitled to a directed verdict on the manslaughter charge as he claims the Commonwealth failed to produce sufficient evidence that he was operating the vehicle at the time of the crash that took the life of his friend, Freddie Thompson. There is no merit to this claim. Ample evidence was presented from which a reasonable jury could believe beyond a reasonable doubt that Osborne was operating the vehicle at the time of the crash. The motion for directed verdict was properly denied. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186

(1991); *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983); and *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

The Commonwealth presented evidence from an accident reconstructionist (Detective Hogg with the Kentucky State Police) who testified there was no doubt in his mind that Osborne was driving the vehicle. Hogg testified that, due to the nature of the accident, the bodies would slide forward and to the right, and that the driver would not have ended up on the right-hand side of the vehicle. Several witnesses testified that they observed the scene of the accident and witnessed the victim, Thompson, lying in the passenger seat. Thompson's legs were both broken and pinned between the passenger doorway and the bedrock of the river. The coroner (Dr. Meade) testified that the right side of Thompson's body absorbed the impact of the wreck and the right side of his head had "turned to jelly." Additionally, there was testimony that Osborne had been wearing a pair of thong-type flip-flops on the day in question. The flip-flops were found on the floor board of the driver's side of the vehicle. Hogg testified that due to the design of the vehicle, which had a console down the center, the driver's shoes would have stayed on the driver's side because the vehicle did not flip over. Admittedly, Osborne offered testimony in an attempt to dispute the Commonwealth's evidence that he was the driver of the car. However, under the evidence presented as a whole, the trial court properly determined that it would not be unreasonable for a jury to find guilt beyond a reasonable doubt on this issue. This is especially true considering the standard requires the trial court to draw all fair and reasonable inferences from the evidence in favor of the Commonwealth when ruling on a motion for directed verdict. *See Benham, supra.*

■ The second ground on appeal claims reversible error on the part of the trial court in its failure to exclude testimony and evidence regarding Osborne's prior DUI conviction. For the following reasons we believe the introduction and use of the evidence did in fact constitute reversible error in this instance.

Subsequent to the events that occurred in Letcher County on May 5 and May 6, 1991, Osborne drove again under the influence of alcohol. This DUI offense occurred in November, 1991. Osborne pled guilty to the subsequent offense on November 20, 1991.

Immediately prior to the commencement of trial, the Commonwealth made a motion to introduce evidence of Osborne's November 20, 1991 DUI conviction in order to prove that the DUI charged in the present case was a second offense in light of the "prior" conviction. The motion was premised on the DUI enhancement statute.[1]

Responding to this motion, Osborne's counsel replied:

Well, I wish to respond but, unfortunately, I'm in quite a predicament in this. No. 1, my argument as to its relevance in this prosecution, as it would be more effectively used as rebuttal evidence, if at all relevant to the prosecution, because, generally speaking, this type of evidence could only be used and only be offered by the Commonwealth to show some sort of a habit or routine that he was engaged in. However,

the fact that the DUI enhancement statutes puts me in a situation where I can't argue that.

. . . .

And I'm ethically bound to the court, as well as to my client, to present the law as I know it best, and I think that's where I'm going to have to be for my position.

Ultimately, the court decided that the evidence of the prior conviction was admissible stating:

Due to the fact of the enhancement statute, it has to be introduced because the DUI statute is an enhancement statute, which carries additional penalties on the second and third offense, and since ... even though the occurrence occurred after the date of this alleged violation, in fact, his conviction date, however, has occurred on the second one and, therefore, it will be permitted to be introduced.

We are immediately confronted with the authority found in *Asher v. Commonwealth*, Ky.App., 763 S.W.2d 153 (1988); *Ratliff v.*

---

1. KRS 189A.010, which was in effect at the time of the events at issue in this case, provided as follows:

   **"189A.010. Operating motor vehicle while under the influence of alcohol or other substance which may impair driving ability prohibited—Penalties.—**(1) No person shall operate a motor vehicle anywhere in this state while under the influence of alcohol or any other substance which may impair one's driving ability.

   "(2) any person who violates the provisions of subsection (1) of this section shall:

   "(a) For the first offense, be fined not less than two hundred dollars ($200) nor more than five hundred dollars ($500) or be imprisoned in the county jail for not less than forty-eight (48) hours nor more than thirty (30) days or both. Following sentencing, the defendant may apply to the judge for permission to enter a community labor program for not less than two (2) days nor more than thirty (30) days in lieu of fine or imprisonment, or both, provided that his offense does not come within the purview of subsection (4) of this section.

   "(b) For the second offense within a five (5) year period, be fined not less than three hundred fifty dollars ($350) nor more than five hundred dollars ($500) and shall be imprisoned in the county jail for not less than seven (7) days nor more than six (6) months and, in addition to fine and imprisonment, may be sentenced to community labor for not less than ten (10) days nor more than six (6) months.

   "(c) For a third or subsequent offense within a five (5) year period, be fined not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000) and shall be imprisoned in the county jail for not less than thirty (30) days nor more than twelve (12) months and may, in addition to fine and imprisonment, be sentenced to community labor for not less than ten (10) days nor more than twelve (12) months.

   "(3) Minimum sentences of imprisonment or community labor under subsections (2)(b) and (2)(c) of this section shall not be suspended, probated, or subject to conditional discharge or other form of early release.

   "(4) When sentencing persons convicted of violating subsection (2)(a) of this section at least one (1) of the penalties shall be assessed and that penalty shall not be suspended, probated, or subject to conditional discharge or other form of early release. If a person other than the person convicted of violating subsection (1) of this section dies or has suffered physical injury, as defined in KRS 500.080, as a result of the convicted person's operation of a motor vehicle in violation of subsection (1) of this section, the sentence shall include imprisonment as specified in subsection (2)(a) of this section and that portion of the sentence shall not be suspended, probated, or subject to conditional discharge or other form of early release. (Enact.Acts 1984, ch. 165, § 1, effective July 13, 1984.)"

*Commonwealth,* Ky.App., 719 S.W.2d 445 (1986); and *Royalty v. Commonwealth,* Ky. App., 749 S.W.2d 700 (1988). Those cases, which dealt only with DUI offenses, clearly authorized the introduction of prior convictions during the course of a DUI trial to prove the DUI on trial was a subsequent offense. *Royalty, supra,* held that for purposes of demonstrating a "prior" conviction, the date of the conviction, not the date of the offense itself, governed. However, the DUI charge and the evidence offered in support of a conviction thereon during the present case is disturbing for several reasons.

First, it is clearly garnered from the indictment and the bill of particulars that the course of conduct for which Osborne was being charged with DUI arose out of the same event and conduct for which he was indicted for manslaughter in the second degree. His wantonness was substantially based on his drunkenness. *See Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991), and *Hall v. Commonwealth,* Ky.App., 819 S.W.2d 39 (1991). It is true that pretrial investigation together with the evidence adduced at the trial itself may ultimately have *negated* a double jeopardy claim.[2] The fact remains, however, that the indictment and the bill of particulars never charged or set forth with any degree of certainty the specifics of the conduct comprising the offense of DUI that purportedly occurred separately from the DUI which constituted the "wanton" operation of the vehicle that resulted in the death of Thompson and the manslaughter charge that followed.

The indictment charged:

The Grand Jury charges: That on or about the 6th day of May, 1991, in Letcher County, Kentucky, the above-named defendant(s): [Charles Osborne]

### COUNT ONE

Committed the offense of Second Degree Manslaughter, K.R.S. 507.040 by Wantonly causing the death of Freddie Thompson through the operation of an automobile.

### COUNT TWO

Committed the offense of Operating an automobile while under the influence of alcohol in violation of K.R.S. 189A.010.

### COUNT THREE

Committed the offense of operating a motor vehicle without liability insurance in effect in violation of K.R.S. 304.39–080.

### COUNT FOUR

Committed the offense of operating a motor vehicle without proper registration plates in violation of K.R.S. 186.170.

The bill of particulars stated:

Comes the Commonwealth and provides the following bill of particulars to the defendant:

1. The exact location of the commission of the alleged crimes.

U.S. Highway 119 or near Partridge, Letcher County, Kentucky.

2. The exact time and date of the commission of the alleged crime.

Approximately 1:00 a.m. on May 6th, 1991.

3. The alleged participation of the defendant in the alleged crime as well as the circumstances evincing the defendant's intention to commit the crime as charged in the indictment.

---

2. Osborne's own testimony during trial delineated a course of conduct in which he could reasonably have been found to have committed a DUI offense separate from that course of conduct which resulted in the manslaughter charge. Osborne testified that he drank beer and smoked marijuana and was, in fact, drunk (even sick from drinking) during the course of the events that occurred on May 5, 1991, into the early morning hours of May 6, 1991, when the fatal accident occurred. Osborne further testified that

he drove his blue Chevrolet Monza with Thompson in it from his house north down U.S. 119 to a store (the testimony reveals this occurred somewhere in the neighborhood of midnight) and stopped the car. While there he was sick from drinking. Osborne and Thompson met a friend there and talked to him for a while. According to Osborne, he and Thompson switched drivers in the store parking lot, and *Thompson* was driving when they left the store and headed south on U.S. 119, at which time the accident occurred.

The defendant intentionally operated a motor vehicle while under the influence of alcohol and marijuana in an unsafe manner and at an unsafe speed. Freddy Thompson, who was a passenger of the defendant, was killed as a direct result.

4. The exact manner and means allegedly employed by the defendant in the commission of the alleged crime.

The defendant intentionally operated a motor vehicle while under the influence of alcohol and marijuana in an unsafe manner and at an unsafe speed. Freddy Thompson, who was a passenger of the defendant, was killed as a direct result.

. . . .

Secondly, the record reveals that the indictment was never, at any time, amended to charge Osborne with a DUI "second" offense. Accordingly, the relevance of the evidence was certainly at issue even assuming the double jeopardy issue was resolved in favor of the Commonwealth.

■ A third point of concern, assuming again that the double jeopardy issue was resolved and the indictment properly charged a DUI *second* offense, was that the jury was never properly admonished that such conviction could not be considered on the issue of defendant's guilt on the manslaughter charge. In fact, the prosecutor *specifically urged* the jury to consider the improper information in deliberating on Osborne's guilt on the manslaughter charge. The prosecutor's comments were inappropriate, inaccurate, highly inflammatory, and unquestionably tantamount to palpable error affecting Osborne's substantial rights.

The following excerpt demonstrates the magnitude of prosecutorial misconduct that occurred during the Commonwealth's opening statement:

[T]his case ... as you may have gathered from the questioning earlier, involves a vehicular homicide.... The Commonwealth will show ... subsequent to the time this man died [Thompson], the defendant [Osborne] in this case again got drunk and operated his vehicle on the roads of this county. He was arrested for that and he pled guilty for that. The

Commonwealth will prove those facts to you ladies and gentlemen, *and upon that proof we submit to you there cannot be any doubt about the guilt or innocence of Charles Osborne on these charges....* (Emphasis added).

Again in closing argument the prosecutor dwelled on the subsequent criminal act:

You know that while he was on bond from killing his buddy, his friend, he got out and done it again. Don't take my word for that, it's in the records, and when you turn him loose again, what do you think he is going to to [sic] tomorrow? Whose life goes at risk then?

. . . .

The issue is what kind of county are you going to have? If you want one where everybody that drives down the highway is at risk, including small children, then turn him loose. He will be happy to accommodate you. He has proved that he will.

. . . .

*This man, even while—even while, before his friend got cold in the ground, was out on the highways drunk again.* (Emphasis added).

■ Our fourth concern regarding the "prior" conviction evidence, offered to support enhancement of the penalty under the DUI statute, is that the jury instruction on second offense DUI was improper. The instruction permitted the jury to fix a penalty for second offense DUI. However, the instruction did not require the jury to make the necessary finding that Osborne had previously been convicted of DUI.

The instruction given the jury provided:

### INSTRUCTION NO. III

### DRIVING UNDER THE INFLUENCE

The Court instructs the Jury in the following manner:

1. You shall find the Defendant, Charles Osborne, guilty of Operating a Motor Vehicle under the Influence, under KRS 189A.010, if and only if, you believe from the evidence, beyond a reasonable doubt, all of the following:

A. That in Letcher County, Kentucky, on or about the 6th day of May, 1991, at Eolia, Kentucky, that Charles Osborne was driving a Chevrolet Manza on Route 119 in Letcher County, Kentucky.

B. Further, the Defendant was operating the motor vehicle above described while under the influence of intoxicating beverages or drugs which may have impaired his driving ability.

Further, if there was 0.10 percent (1/10%) or more by weight of alcohol in such blood, it shall be presumed that the Defendant was under the influence of intoxicating beverages.

2. If you find the Defendant guilty under Instruction No. III you shall fix his punishment at incarceration in the Letcher County Jail for not less than seven days nor more than six months, or at a fine of not less than $350.00 nor more than $500.00, or both, in your discretion.

Difficult legal issues have always been presented regarding the use of evidence, during the course of a criminal trial, that demonstrates an accused has previously been convicted of a criminal act. The majority of jurisdictions start with the general rule that such evidence is inadmissible and then have established several exceptions to this prohibition.[3] As pointed out by Lawson, the Kentucky Supreme Court has developed the law along these lines. The general rule and attitude regarding the use of such evidence has been set forth as follows:

> It is a well-known fundamental rule that evidence that a defendant on trial had committed other offenses is never admissible unless it comes within certain exceptions, which are as well defined as the rule itself.... The rule of admissibility is one that should be closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of such evidence.

*Jones v. Commonwealth,* 303 Ky. 666, 198 S.W.2d 969, 970 (1947).

■ The *Ratliff, supra,* decision provides authority for the application of one such exception to the general rule. Under Ken-

tucky's DUI statute, which provides for enhancement of the penalty based on previous offenses, prior convictions are relevant and a necessary element of proof. Accordingly, the *Ratliff* Court concluded that such information is admissible despite the inevitable prejudicial effect it will have upon the jury.

In *Ratliff,* this Court was confronted with a situation concerning the admissibility of evidence of prior DUI convictions in accordance with an application of KRS 189A.010(2), *et seq.,* and a jury trial on a claimed violation of the statute. The appellants in *Ratliff* argued that the trial court erred during the course of their DUI trials when it allowed admission of their prior drunken driving convictions before the jury reached a verdict as to their guilt on the immediate DUI charge. Exposing the jury to such information, maintained the *Ratliff* appellants, invariably prejudiced their defense. The *Ratliff* Court reluctantly concluded that:

> [D]ecisions by our Supreme Court indicate that in cases such as the present appeals in which proof of defendant's prior convictions was essential to the determination of guilt on the primary charge or the fixing of an appropriate punishment, evidence of those earlier convictions was admissible regardless of their unquestionably prejudicial effect. *Wahl v. Commonwealth,* Ky., 490 S.W.2d 769 (1972).

*Ratliff* at 449.

The *Ratliff* opinion relied on the holding in *Wahl v. Commonwealth,* 490 S.W.2d 769 (1972), to reach its conclusion. *Ratliff* pointed out that, although the legislature has revised the persistent felony offender statute such that it now mandates trial by means of a bifurcated proceeding which will prevent the recurrence of a factual situation similar to that presented in *Wahl,* the holding in *Wahl* is still applicable in situations where a statute creating a particular offense (such as KRS 189A) also provides for enhanced sentences for repeat offenders, but does not mandate trial by means of a bifurcated proceeding.

---

**3.** R. Lawson, *The Kentucky Evidence Law Hand-* *book* 3rd Edition § 2.25 (1993).

In the present case, unlike *Ratliff, supra,* and *Asher, supra,* the DUI charge was being tried within the context of a trial on a far more serious criminal offense—second degree manslaughter.

■ As noted, KRS 189A does not require that offenders be tried by means of a bifurcated proceeding. Nor does it appear that Osborne attempted to obtain a bifurcated trial. Without doubt the introduction of Osborne's prior DUI conviction during the course of his manslaughter trial grossly prejudiced the jury and thereby, in our opinion, violated his constitutionally protected right to a fair trial. Accordingly, it is our opinion that *Ratliff* and its progeny, including *Royalty, supra,* should be narrowly limited in scope and application to cases involving only DUI and traffic violations.[4]

■ If the Commonwealth decided to try Osborne for both a DUI offense and a manslaughter offense and elected to prosecute both charges in the same trial, they should have been prohibited from attempting to prove second offense DUI through introduction of a prior DUI conviction during the course of the manslaughter prosecution. Any exception to the general rule regarding admissibility of prior criminal acts was far inferior to Osborne's constitutional rights in this instance, and must yield thereto in order that Osborne's substantial rights be safeguarded in his manslaughter prosecution. Particularly crucial is the fact that the very nature of the criminal act of manslaughter in this instance involved the element of driving under the influence. Ironically, support for our conclusion that the authority allowing into evidence a "prior" DUI conviction should be narrowly limited to cases involving DUI and traffic violations can be found in the *Walden, supra,* case.

While *Walden* is unquestionably distinguishable from the present case in many respects, certain aspects of the reasoning applied therein are significant to our rationale today. In ruling upon whether it was error to instruct the jury in a murder prosecution that was being tried together with a DUI charge about a statutory presumption of intoxication, the *Walden* majority stated:

> Each charge prosecuted must stand on its own bottom, and the trial court erred in permitting the Commonwealth to piggyback the statutory presumption into the murder prosecution by claiming that it was admissible in the DUI prosecution. On the contrary, if the Commonwealth elects to prosecute both charges in the same trial, the fact that it is inadmissible in the murder case means the statutory presumption should not be used in the DUI prosecution, rather than vice versa.

*Walden* at 104.

In our opinion, the same logic expressed in the above-quoted language should extend to Osborne's case. Thus, the introduction of the evidence of his subsequently committed DUI offense during his manslaughter prosecution should have been prohibited even if it would otherwise have been admissible in a separate DUI trial. *Cf. Clay v. Commonwealth,* Ky., 818 S.W.2d 264 (1991).

■ The Commonwealth urges that the appellant failed to object to the introduction of the prior conviction and thereby failed to preserve the issue for review. RCr 9.22. We have previously noted counsel's reply to the Commonwealth's motion to introduce the evidence and are of the opinion that he reasonably related his objection to the relevancy

---

4. This conclusion may not comport with the brief attention given an arguably similar issue raised in *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991). Interestingly, the appellee does not cite *Walden* for the proposition that introduction of prior DUI convictions is proper during the course of a trial on a more serious criminal offense. The appellant does, however, cite ,a portion of the reasoning in *Walden* to buttress his argument that the evidence of his subsequent offense and resulting "prior" conviction should *not* have been introduced during his manslaughter trial. The *Walden* Court briefly concluded that appellant's claim concerning reversible error in the admission of the prior conviction during his trial for wanton murder was not preserved and not reviewable under RCr 10.26. The factual circumstances surrounding the introduction of the evidence and the extent of its use in the *Walden* case are not revealed in the decision itself. Thus, we are hindered in our attempt to rely thereon for guidance. In our opinion, the *Walden* Court did not contemplate the use of a subsequent offense to establish that the appellant was a repeat offender as was the situation in the present case.

of the testimony. Counsel then noted that he felt bound by Kentucky law and statutory authority to concede the admissibility of the evidence. Hence, he did not make a contemporaneous objection each time the evidence was introduced. We are inclined to conclude that, under the circumstances and given counsel's reasonable interpretation of case law, his comments should be deemed a minimally adequate objection. Regardless, we are permitted and, in fact, compelled to review error of such magnitude as that presented in this case. The record clearly reveals that Osborne's constitutional guarantee to a fair and impartial jury was seriously violated. Under RCr 10.26:

> A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Having reviewed the record in its entirety, we conclude that a substantial possibility exists that but for the admission of the evidence regarding Osborne's subsequent DUI offense, the result may have been different. We cannot ignore the fact that the evidence offered to prove Osborne was operating the vehicle at the time of the accident was vigorously disputed and that it was completely circumstantial. Osborne himself remained steadfast in his denial that he was driving at the time of the accident.

The problem was compounded when the Commonwealth made egregious remarks emphasizing the subsequent offense which effectively urged the jury that on the basis of that evidence, Osborne's guilt on the offenses charged should be deemed more likely in their minds. *See Miracle v. Commonwealth,* Ky., 646 S.W.2d 720 (1983). Even *Ratliff* cautioned:

> [W]e do not mean to minimize the unavoidable prejudice that will result from the early introduction of evidence regarding a defendant's previous convictions for drunken driving. As much as possible, the trial court in this type of prosecution should attempt to negate the harm produced by the disclosure of such informa-

tion through the admonishment to the jury that it should be given no weight in their deliberations as to the defendant's guilt. *Id.* 719 S.W.2d at 449.

No such admonishment was ever given to the jury during Osborne's trial.

For all the foregoing reasons, we conclude the admission of the evidence constituting Osborne's "prior" conviction was erroneous. We are convinced that the error was palpable where, as here, it clearly deprived Osborne of his substantial constitutional right to a fair and impartial adjudication. *See Paenitz v. Commonwealth,* Ky., 820 S.W.2d 480 (1991).

■■■ Osborne's third argument on appeal is that the court erred in overruling his motion to suppress evidence of his blood test. In support of this contention, Osborne alleges infringement of his Fourth and Fourteenth Constitutional Amendment protections and violation of his rights under Section 10 of the Kentucky Constitution. Osborne was taken to the hospital from the scene of the accident. The blood test at issue was obtained as part of the hospital's routine diagnostic procedure. The serum was collected by authorized hospital personnel during the course of his medical treatment following the accident. We conclude there to be no merit to Osborne's claim. His rights in this regard were not violated. *See Marks v. Commonwealth,* Ky.App., 698 S.W.2d 533 (1985). The Commonwealth was entitled to subpoena and introduce the resulting records and evidence acquired lawfully by the hospital. *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

■■■ The fourth and final issue on appeal is Osborne's claim that the sentence and fine for driving under the influence should be vacated as they violate double jeopardy principles.

We have alluded to the double jeopardy issue earlier in this opinion. As previously pointed out, it is quite obvious that the Commonwealth secured the indictment for both DUI and second-degree manslaughter based on but one course of conduct in which Osborne was claimed to have operated a motor vehicle under the influence. Both crimes

were charged as a result of the same conduct. Despite the fact that the sequence of events as testified to by Osborne himself tend to establish a separate DUI offense and thereby negate his legal argument, we are of the opinion that the principles of double jeopardy, as espoused and applied by the Kentucky High Court, have been violated. *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); and KRS 505.020.[5]

Accordingly, the judgment of the Letcher Circuit Court sentencing and fining Osborne for DUI must be vacated. *Walden, supra,* and *Hall, supra.* Additionally, that portion of the judgment convicting Osborne of second-degree manslaughter is hereby vacated and, for all the foregoing reasons, the case is remanded for a new trial. The judgment is affirmed with respect to the disposition concerning Osborne's operation of a motor vehicle without liability insurance and without proper registration plates.

All concur.

---

**5.** We are aware of *U.S. v. Dixon,* 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), which modifies to a certain extent the United States Supreme Court's analysis of double jeopardy claims as set forth in *Grady.* However, as yet, the Kentucky Supreme Court has not commented on the holding in *Dixon.*