COMMONWEALTH of Kentucky,
Appellant,

v.

R. Cletus MARICLE, Judge, Clay
Circuit Court, Appellee,

and

Scott Madden;  Larry Joe Roberts;
Robert Stivers, Real Parties
in Interest.

No. 98–SC–000898–MR.

Supreme Court of Kentucky.

Aug. 26, 1999.

Rehearing Denied Feb. 24, 2000.

Daniel Luke Morgan, Christina M. Napier, Assistant Attorney General, Frankfort, for Appellant.

R. Scott Madden, Larry Joe Roberts, Manchester, Bertram Robert Stivers II, Commonwealth Attorney, Manchester, for Appellee.

GRAVES, Justice.

The Commonwealth of Kentucky appeals from an order of the Court of Appeals which denied the Commonwealth's petition for a writ of prohibition and/or mandamus. The Commonwealth sought an order directing the Clay Circuit Court to disqualify Appellees from further representation of Reginald Stidham. For the reasons set forth herein, we reverse, in part, the Court of Appeals and grant the Commonwealth extraordinary relief.

Stidham, the defendant in the underlying criminal action, is charged with murder, first-degree assault, first-degree wanton endangerment, leaving the scene of an accident, passing in a no passing zone, driving under the influence, third offense, and operating a vehicle on a suspended license. The charges stem from an August 1997 motor vehicle collision in which two victims died and two other victims were injured. At the preliminary hearing on September 8, 1997, Sharon Allen, then the sole assistant to the Clay County Commonwealth Attorney, assumed the role of lead counsel for the prosecution. Stidham was represented by Appellees, Scott Madden, Larry Joe Roberts, and Robert Stivers.

On May 31, 1998, less than one month before trial, Sharon Allen left her position with the Commonwealth Attorney's office and began working with Appellees, Madden and Roberts. Following expressions of outrage from the victims' family, Commonwealth Attorney Gary Gregory filed a motion to disqualify himself as prosecutor, citing the conflict of interest and appearance of impropriety created by Allen's move to the employ of Madden and Roberts' law firm. By order entered June 25, 1998, the trial court ruled that because of the appearance of impropriety created by virtue of Allen's new employment with the attorneys representing Stidham, Gregory would be disqualified from all further proceedings.

Thereafter, the special prosecutor filed a motion to disqualify Appellees as defense counsel. On August 6, 1998, the trial court held an evidentiary hearing, during which one of the surviving victims, Geraldine Abner, testified as to the extensive communications which took place between herself and Allen, including trial strategies and witness testimony. Ms. Abner stated that Allen discussed anticipated cross-examination from defense counsel and how Ms. Abner would respond. Further, Allen and Ms. Abner discussed Ms. Abner's eleven-year-old son's testimony and how he would react on the witness stand.

In addition to Ms. Abner's testimony, evidence was presented that Allen had actually accepted employment with Madden and Roberts in March 1998, although she did not inform the Commonwealth Attorney's office until sometime in April. In response, Madden and Roberts attempted to distance themselves from Allen, calling the employment relationship merely a "loose association." Madden and Roberts qualified the association as a case-by-case fee sharing arrangement.

In an order dated August 19, 1998, the trial court denied the motion to disqualify counsel. The court stated that there were no grounds to disqualify Robert Stivers since he was simply co-counsel, and was not associated with Madden and Robert's law firm. Moreover, the trial court found that Allen had been screened from participation in the Stidham matter since joining the offices of defense counsel, and that

even if Madden and Roberts had improperly negotiated for employment with Allen during the pendency of the criminal action, Allen's disqualification was not imputed to them. The trial court noted that a defendant's right to choice of counsel outweighed the appearance of impropriety created by Allen's change of employment.

As a result, the Commonwealth filed a petition for a writ of prohibition and/or mandamus in the Court of Appeals. In an order dated October 13, 1998, the Court of Appeals denied relief, and this appeal ensued.

■ Supreme Court Rule 3.130 (Rule 1.11), Successive Government and Private Employment, provides:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate public body or government agency consents after consultation. No lawyer in a firm in which that lawyer associated may knowingly undertake or continue representation in such a matter unless:

(1) The disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) Written notice is promptly given to the appropriate public body or government agency to enable it to ascertain compliance with the provisions of this rule.

(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of the person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

(1) Participate in a matter which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or

(2) Negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

(d) As used in this rule, the term "matter" includes:

(1) Any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and

(2) Any other matter covered by the conflict of interest rules of the appropriate government agency.

(e) As used in this rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.

In *Whitaker v. Commonwealth*, Ky., 895 S.W.2d 953 (1995), we were presented with a situation where the defendant was initially represented by a member of the public defender's office, Carolyn Keeley. Approximately two and one-half months later, Keeley resigned from her position with the public defender's office and accepted em-

ployment in the office of the Commonwealth Attorney. The issue before this Court concerned the disqualification of Keeley, as well as the entire Commonwealth Attorney's office, on ethical grounds. In examining SCR 3.130 (Rule 1.11), we stated:

> We are mindful that the commentary to SCR 3.130 (Rule 1.11) specifically states that: "Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated." *Kentucky Rules of Professional Conduct,* Rule 1.11 cmt. [9] (1989). However, commentary provides merely a guide to interpretation of the rules as set forth, but does not have the force of law. *Cf.,* KRE 1104; KRS 500.100. Given that the case at bar involves the very delicate and important issue of client confidentiality in the context of a criminal trial, we believe that the Sixth Amendment to the United States Constitution requires a careful inquiry by the trial court and disqualification of the entire office of the Commonwealth's Attorney if the attorney [Keeley] has engaged in a substantial and personal participation in the defendant's case, for to do otherwise would be to ignore the potentially chilling effect of any future attorney/client relationships.

*Id.* at 956. We further opined that the phrase "substantial and personal participation" would include "an exchange of confidential information in the form of planning trial strategy, or discussions of potential witnesses to be called on the defendant's behalf, or avenues of investigation to be taken. . . ." *Id.* Finally, the *Whitaker* opinion was a departure from the prior decision in *Summit v. Mudd,* Ky., 679 S.W.2d 225 (1984), which required a showing of actual prejudice. "We do not believe that there must be a showing of prejudice by the defendant in a case such as this in order to bar the Commonwealth's Attorney from prosecuting this matter." *Whitaker, supra.*

When the case at bar is reviewed in accordance with SCR 3.130 and the *Whitaker* opinion, several problems arise. It is apparent and undisputed that Sharon Allen's participation in the prosecution of Reginald Stidham was personal and substantial. We are particularly impressed by the fact that while an assistant Commonwealth Attorney, Allen continued to participate in the Stidham matter for some two and one-half months after she negotiated employment with Madden and Roberts. This alone belies the contention that Allen was screened from any participation in the underlying action. Moreover, despite Madden and Roberts' claim that Allen is not an employee, the facts certainly raise an inference to the contrary. Although she may maintain a separate office, advertisements in the local yellow pages list Sharon Allen as a member with the law firm of Madden and Roberts. The advertisement indicates that Allen is an integral part of the law firm, sharing common areas of practice, street addresses, a fax number and phone numbers. It is quite apparent from the advertisement that Allen shares more than a casual case-by-case relationship with the law firm.

SCR 3.130–1.11(c)(2) also prohibits a lawyer serving as a public officer from negotiating for private employment with any person who is involved as a party or as attorney for a party in a matter which the lawyer is participating personally and substantially. Without question, Allen was personally and substantially involved in the underlying criminal action when she negotiated with a firm she knew was representing the defendant. Kentucky Bar Association Ethics Opinion E–399 states:

> If the lawyer who wishes to change jobs is actually involved in the representation of one of the adverse clients or has actual knowledge of information protected by Rules 1.6 and 1.9(b), the negotiations could suggest a violation of KRPC 1.16 and 1.9, and even lead to the imputed disqualification of the negotiating firm.

Although KBA E–399 concerns lawyers in private practice, an analogy can easily be applied to the facts at hand with the conclusion being that such negotiations are improper and can result in disqualification to the offending parties.

In ruling that *Whitaker, supra,* was not applicable to the present situation, the trial court stated that the Commonwealth would not suffer the same chilling effect as a consequence of the appearance of impropriety as would a defendant, because the people of the Commonwealth, rather than the victims and witnesses, are the clients of the Commonwealth. However, we are of the opinion that it is essentially a distinction without a difference. The potential chilling effect to communications between victims and witnesses and the Commonwealth is as real and substantial a consequence to the Commonwealth as it is to criminal defendants. It stems not only from the relationship a prosecutor develops with victims and witnesses, but from the public perception that the adversarial system has been abrogated when a prosecutor becomes associated with the defense attorneys she formerly opposed.

■ The defendant's right to counsel is certainly of fundamental importance. However, while a criminal defendant has a constitutional right to effective assistance of counsel, there is no unqualified right to his choice of counsel. In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the United State Supreme Court held that while there is a federal presumption in favor of a defendant's choice of counsel, that presumption is overcome when representation will create "a serious potential for conflict." *Id.* at 164, 108 S.Ct. at 1699. Thus, we believe that the trial court erred in ruling that Stidham's right to representation by Madden and Roberts outweighed the serious conflict and appearance of impropriety created by Allen's decision to join their office during the pendency of the criminal action. Clearly, the trial court found a sufficient conflict to warrant disqualification of the Commonwealth Attorney. We can discern no reason why the same conflict should not likewise prohibit Madden and Roberts from participating in the criminal action as well.

■ Issuance of a writ of mandamus or prohibition is an extraordinary remedy and will be granted only by showing that: (1) the lower court is proceeding or about to proceed outside of its jurisdiction and there is no adequate remedy by appeal, or (2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result. *Tipton v. Commonwealth,* Ky.App., 770 S.W.2d 239 (1989); *Hobson v. Curtis,* Ky., 329 S.W.2d 565 (1959). We agree with the Commonwealth that without intervention, it will suffer irreparable injury as a result of the trial court's denial of the motion to disqualify defense counsel. Clearly, there will be a perception of impropriety that will forever taint the outcome of the trial. Moreover, the Commonwealth certainly has no adequate remedy by appeal in the event that Stidham is acquitted. As such, we conclude that the Commonwealth has demonstrated its entitlement to a writ of mandamus, and that the law firm of Madden and Roberts should be disqualified from further representation of Stidham in the criminal proceedings.

■ We do, however, affirm the trial court's ruling that there is no basis for the disqualification of Robert Stivers. Stivers is not a member of Madden and Roberts' firm, nor did he participate in the employment negotiations with Allen. It is not alleged that Stivers was even aware of such negotiations. Moreover, there is nothing in the record to indicate that any confidential information was imparted to Stivers. Absent some evidence of collaboration between Stivers and Allen, we are unable to conclude that a sufficient conflict exists so as to warrant the disqualification of Stivers.

The decision of the Court of Appeals is reversed and this matter is remanded to the Clay Circuit Court for entry of an order disqualifying attorneys R. Scott Madden and Larry Joe Roberts from further representation of Reginald Stidham in the underlying criminal proceedings.

All concur.