Hon. Donald E. ARMSTRONG, Jr. and Brian Michael Rowland, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–000495–MR.

Court of Appeals of Kentucky.

March 31, 2006.

Discretionary Review Denied by Supreme Court Nov. 15, 2006.

---

22. *Id.* at 435.

23. 469 S.W.2d 559, 563 (Ky.1971).

Michael R. Mazzoli, Paul S. Gold, Louisville, KY, for appellants.

Irv Maze, Jefferson County Attorney, Benjamin F. Wyman, III, Special Assistant Attorney General, Assistant Jefferson County Attorney, David A. Sexton, Louisville, KY, for appellee.

Before BUCKINGHAM, JOHNSON, and TAYLOR, Judges.

*OPINION*

BUCKINGHAM, Judge.

Jefferson District Court Judge Donald E. Armstrong, Jr., and Brian Michael Rowland, the real party in interest, appeal from an order of the Jefferson Circuit Court granting a Petition for Writ of Mandamus filed by the Commonwealth. The issue involves whether, in light of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the Commonwealth is entitled to obtain Rowland's blood test results from the University of Louisville Hospital for use in prosecuting him for the offense of driving under the influence (DUI). We conclude that the circuit court did not err in granting the petition, and we thus affirm.

On July 19, 2003, Rowland was found passed out and sitting in a vehicle at the intersection of Taylorsville Road and Breckenridge Lane in Jefferson County. He was transported to a hospital where he refused to consent to a police officer's request for a blood sample. Rowland did consent to medical treatment and, in the course of that treatment, the hospital staff collected a blood sample and conducted toxicology tests.

Rowland was later charged with DUI in the Jefferson District Court. The Commonwealth subsequently filed a motion asking the court to order the hospital to release the blood alcohol/toxicology test results. The court denied the motion in an order entered on September 17, 2004. The court reasoned that Rowland had a legitimate expectation of privacy in his medical records that outweighed the Commonwealth's desire to prosecute him for DUI. The court relied on HIPAA and *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). The court also cited *Combs v. Commonwealth,* 965 S.W.2d 161 (Ky.1998).

Thereafter, the Commonwealth filed a petition for writ of mandamus, naming Judge Armstrong as the respondent and Rowland as the real party in interest. In its petition, the Commonwealth requested the circuit court to order Judge Armstrong to sign the Commonwealth's tendered order directing the hospital to produce the blood test results.

In an order entered on February 10, 2005, the circuit court granted the relief requested by the Commonwealth. The court reasoned that HIPPA does not require the balancing test used by the district court and that the Commonwealth

was entitled to the blood test results pursuant to *Osborne v. Commonwealth,* 867 S.W.2d 484 (Ky.App.1993). This appeal by Judge Armstrong and Rowland followed.

■ The U.S. Secretary of Health and Human Services promulgated regulations pursuant to HIPAA in order to restrict and define the ability of covered entities (health plans, health care clearinghouses, and health care providers) to divulge patient medical records. *See Tapp v. State,* 108 S.W.3d 459, 462 (Texas Ct.App.2003). Pursuant to those regulations, as a covered entity, the hospital is allowed, under certain circumstances, to disclose protected health information without the written authorization of the individual or the opportunity for the individual to agree or object. 45 C.F.R.[1] 164.512. As the regulations pertain to this case, a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to a court order. 45 C.F.R. 164.512(e).

The parties and the courts below have discussed the issue in terms 45 C.F.R. 164.512(f), rather than in terms of 45 C.F.R. 164–512(e). This section is directed at disclosure for law enforcement purposes. The pertinent language in the regulation allows covered entities to disclose protected health information:

> In compliance with and as limited by the relevant requirements of:
>
> (A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer[.]

*See* 45 C.F.R. 164.512(f)(1)(ii)(A). As this dispute arose in the context of the Commonwealth seeking a court order within a judicial proceeding, 45 C.F.R. 164.512(e) is the applicable section. Regardless, the comments to the final regulation make it clear that:

> This regulation does not change current requirements on or rights of covered entities with respect to court orders for the release of health information. Where such disclosures are required today, they continue to be required under this rule.

65 Fed.Reg.[2] 82462,82682 (2000).

Having concluded that HIPAA and the regulations implementing it impose no new requirements where disclosure is sought by court order, we must now consider applicable state law. The *Osborne* case, although pre-HIPPA, explains the right of the Commonwealth to obtain the blood test results. In that case, the defendant was involved in a one-vehicle accident in which the passenger riding with him was killed. The defendant was taken from the scene of the accident to a hospital where blood was drawn as part of the hospital's medical treatment of him. The court in that case concluded that the defendant's rights were not violated and that the "Commonwealth was entitled to subpoena and introduce the resulting records and evidence acquired lawfully by the hospital." *Id.* at 492.

Judge Armstrong and Rowland argue that the *Osborne* case and a line of cases thereafter do not support the court-ordered disclosure of the blood test results. In the *Combs* case, the defendant was arrested for DUI and he refused a breath or blood test to determine his blood alcohol content. The arresting officer then procured a search warrant and the defendant's blood was drawn.

A person who refuses to submit to a breath, blood, or urine test under KRS[3] 189A.103 is subject to revocation of his

---

1. Code of Federal Regulations.

2. Federal Register.

3. Kentucky Revised Statutes.

driving privilege. KRS 189A.105(1). However, KRS 189A.105(2)(b) states as follows:

Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a defendant charged with a violation of KRS 189A.010, or other statutory violation arising from the incident, when a person is killed or suffers physical injury, as defined in KRS 500.080, as a result of the incident in which the defendant has been charged.

Since there was no death or physical injury involved in the *Combs* case, the Kentucky Supreme Court held that the blood test results were inadmissible in the prosecution of the case. *Id.* at 165. The court reasoned that "[t]he plain language of [the statutes] prohibits compelled body searches of a DUI suspect following a refusal to take a blood test, unless death or physical injury are involved." *Combs*, 965 S.W.2d at 164.[4]

At the conclusion of its opinion in the *Combs* case, the Kentucky Supreme Court stated that "[i]t is the holding of this Court that the admission of the results of a blood test in a DUI case not involving death or physical injury is improper." *Id.* at 165. In *Commonwealth v. Lopez*, 3 S.W.3d 351 (Ky.1999), the court acknowledged that this holding did not reflect the true intent of its opinion and that the opinion needed to be clarified. *Id.* at 353. The court noted that "*Combs* is limited to those situations where a search warrant was necessary to obtain blood evidence in order to prosecute a DUI case not involving injury or death." *Id.* The court further noted that its language in the *Combs* case "does not control a situation where a defendant expressly consents to a blood alcohol test in compliance with KRS 189A.103." *Id.*[5]

In *Commonwealth v. Morriss*, 70 S.W.3d 419 (Ky.2002), the court was again confronted with the application of KRS 189A.105(2)(b). In that case, the defendant was the driver of a vehicle that ran through a red light at an intersection, striking another vehicle and killing the passenger therein. The defendant was taken to a hospital, and a search warrant was issued to collect blood and urine samples from him. The defendant was later arrested and charged with DUI and other offenses.

The defendant in *Morriss* moved the court to suppress the blood test results because the statute allows a search warrant only "when a person is killed or suffers physical injury as defined in KRS 500.080, *as a result of the incident in which the defendant has been charged.*" KRS 189A.105(2)(b). (Emphasis added.) The defendant reasoned that since he had not been charged at the time the search warrant was issued, the results of the test had to be suppressed. The Kentucky Supreme Court held that the statute did not apply because no charge had been brought against the defendant. *Morriss*, 70 S.W.3d at 421. However, the court concluded that traditional search and seizure principles controlled, and it remanded the case to the circuit court for a determination of whether the search warrant was otherwise proper. *Id.*

---

4. The "plain language of the statutes" to which the court referred was in an earlier version of KRS 189A.105(1). That section has since been amended and the language removed from the statute.

5. In the *Lopez* case, the defendant consented to a blood test after her breath sample was determined to be inadequate. 3 S.W.3d at 352.

We conclude that none of the three cases cited above have relevance to the fact situation herein. Those cases involved KRS 189A.105(2)(b) and its authorization of a search warrant to procure blood or urine for testing when the driver has not consented to such testing. This case does not involve the obtaining of a blood or urine sample from a defendant who has refused to consent to testing. Rather, it involves the Commonwealth's right to obtain evidence in the form of medical records that are in the possession of a hospital after a defendant's blood sample has been taken voluntarily in the course of medical treatment. We conclude that our holding in the *Osborne* case gives the Commonwealth this right.

The district court held that Rowland's right to medical privacy under HIPAA exceeded the Commonwealth's interest in prosecuting him for DUI. The court relied on the U.S. Supreme Court's decision in the *Sell* case. Rowland continues this line of reasoning in his brief by stating that the court should undertake a balancing test before determining whether the Commonwealth's interest in prosecution outweighs his privacy rights.

We fail to see how the U.S. Supreme Court's decision in the *Sell* case has any relevance here. In *Sell,* the issue involved the validity of a lower court order authorizing the forcible medication of a criminal defendant with antipsychotic drugs to restore his competency to stand trial. The case did not involve the disclosure of protected health information or HIPAA. At any rate, we conclude that the *Sell* case does not impose any balancing test that must be followed in this case.

Further, we find nothing in HIPAA or the regulations that requires a balancing test. Rather, we see only that the drafters of the regulations imposed the regulations themselves in an attempt "to balance competing and legitimate interests." 65 Fed. Reg. 82462, 82680 (2000). Further, the drafters concluded that "where access to protected health information is granted after review by an independent judicial officer (such as a court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer), no further requirements are necessary." *Id.* In short, while we decline to hold that courts should order the discovery of medical records in all cases and under all circumstances, it is clear that in this case the circumstances entitle the Commonwealth to obtain the records. *See Osborne, supra.*

■ Finally, Judge Armstrong and Rowland contend that the circuit court abused its discretion by granting the petition for writ of mandamus after finding that the Commonwealth would suffer irreparable injury. In *Commonwealth v. Maricle,* 10 S.W.3d 117 (Ky.1999), the Kentucky Supreme Court stated as follows:

> Issuance of a writ of mandamus or prohibition is an extraordinary remedy that will be granted only by showing that: (1) the lower court is proceeding or about to proceed outside of its jurisdiction and there is no adequate remedy by appeal, or (2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.

*Id.* at 121. The issuance of a writ of mandamus is within the discretion of the court. *Martin v. Administrative Office of the Courts,* 107 S.W.3d 212, 214 (Ky.2003).

■ A petition for writ of mandamus is a vehicle whereby the Commonwealth may seek review of a trial court's interlocutory order where review by appeal is not available. *See Tipton v. Commonwealth,* 770 S.W.2d 239, 241 (Ky.App.1989), *abrogated in part on other grounds by Hoskins v.*

*Maricle,* 150 S.W.3d 1, 10 (Ky.2004). "Otherwise, the Commonwealth may be forced to trial without vital evidence or with some other significant prejudice to its case[.]" *Id. See also Maricle,* 10 S.W.3d at 121. We conclude that the circuit court did not abuse its discretion in granting the writ based on irreparable harm to the Commonwealth because, as the court noted in the *Maricle* case, the Commonwealth would have no adequate remedy by appeal in the event Rowland is acquitted. *Id.*

The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.