# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 18, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0208-MR

ANGELA CHAPMAN                                                APPELLANT

V.

ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE JOHN D. SIMCOE, JUDGE
NO. 22-CR-01057

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Angela Chapman was convicted of two counts of wanton murder, one count of wanton first-degree assault, and driving under the influence. She now appeals her wanton murder and first-degree assault convictions and resulting 65-year sentence as a matter of right. Ky. Const. § 110(2)(b).

This appeal requires this Court to address whether the trial court erred in denying her motions for directed verdict. After a thorough review, we affirm the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2022, Angela Chapman arrived at the Landmark Recovery Center in Louisville, Kentucky to be treated for her substance use disorder. On November 13, 2022, Chapman complained of knee pain, became upset with Landmark staff, and demanded to leave. She left the facility in her

2015 Chrysler Town and Country minivan and traveled to a nearby Walgreens where she withdrew $200 from the ATM and bought syringes.  She next stopped to buy what she said she believed to be a gram of heroin from her drug dealer.  While sitting in her van, she injected some of the drug in her arm.  Chapman expected this "shot" to make her knee feel better and it did.  Afterwards, she decided to drive to her home to Radcliff, Kentucky, taking her usual route, traveling southbound on US 31W.

US 31W is a busy four-lane highway between Hardin County and Jefferson County, Kentucky with two northbound lanes and two southbound lanes.  The weather was unremarkable that day and the posted speed limit was 55 mph.  In addition, two brightly colored and continuous yellow lines separated the northbound lanes from the southbound lanes.  The yellow lines were also grooved with rumble strips[1].  As Chapman was driving towards Radcliff, her knee began bothering her again, so she prepared and injected the drug into her shoulder while driving.  After Chapman injected this shot, she looked down to check her tire pressure when "everything w[ent] black."

Chapman ultimately crashed her van into Jasilyn Gardener's 2005 Nissan Altima.  Ms. Gardener was pregnant at the time and traveling northbound with her two young boys, Jareese and Jarrell Hunter.  The collision was so violent that the car split into two halves, sending the front and back halves in opposite directions.  The front end of the car was smashed in,

---

[1] Rumble strips provide both auditory and tactile warnings to an inattentive driver.

the driver's door was completely ripped off, and an infant car seat sat on the road completely dislodged from the car. The collision left Ms. Gardener with two fractured ribs, two collapsed lungs, and a ruptured spleen which required surgery. Ms. Gardener's two boys died from blunt force trauma from the collision: Jareese had massive head trauma; Jarrell had blunt force trauma to the upper torso, head, and neck area. Ms. Gardener later lost her pregnancy but testified that her doctors told her that it was not due to the wreck. Chapman was not seriously injured.

Witnesses to the collision all noted Chapman's erratic driving. One witness noticed Chapman's van swerving in and out of traffic in their rearview mirror; another witness became frightened when Chapman's van sped past while a third witness pulled over to call 911. Witnesses also observed Chapman's van cross the yellow rumble strips and travel in the wrong lane for approximately 10 seconds. Furthermore, two additional witnesses to the collision stopped to assist at the accident scene. One witness testified that his wife saw a syringe between the steering wheel and driver door of Chapman's van; the other witness noticed a syringe in Chapman's hand that had not been fully ejected.

Hardin County detectives arrived on scene and found an off-white greyish powder in a cellophane bag and a bag of new syringes in Chapman's van and a used syringe with a bent needle in her purse. A blood test two hours later revealed that Chapman's blood contained four nanograms per milliliter (ng/mL) of fentanyl. The Hardin County Sheriff's Office also obtained the event

3

data recorder (EDR)[2] from both Chapman's van and Ms. Gardener's car, but only the data from Chapman's van could be translated due to compatibility issues.[3]  The EDR report showed that: 1) Chapman's van accelerated from 85mph to 94mph; 2) there was minimal steering input; and 3) no brake lights had activated.

Chapman was taken to the Hardin County Detention Center and charged with a first offense driving under the influence (DUI), two counts of wanton murder, one count of first-degree assault, and being a second-degree persistent felony offender.  The jury found Chapman guilty of all charges except the second-degree persistent-felony-offender charge.  The trial court accepted the jury's recommendation for a sentence of 25 years for each murder, 15 years for first-degree assault, and 30 days for the DUI resulting in 65 years, consecutively.

---

[2] The EDR saves data from a vehicle five seconds before a collision, including, but not limited to: whether seatbelts were worn at the time of the collision; how fast the tires were rotating; if there was a turn signal activated; whether the brakes had been depressed; and steering input from the driver.

[3] Ofc. Sallee testified he executed a search warrant to get both Chapman's and Ms. Gardener's EDR and took them to Ofc. Thomas in Elizabethtown, KY to input the data into a device that translates supported data into coherent information.  Ofc. Sallee further testified that Ms. Gardener's data was not supported by the system in Elizabethtown.  Ofc. Sallee then contacted the Kentucky State Police for assistance in translating the data, but KSP responded that they used, in effect, the same system as Elizabethtown; so, if Elizabethtown was unable to translate the data, then KSP would also be unable to translate the data.

## II. ANALYSIS

### A. The Hardin Circuit Court did not err in denying Chapman's motion for a directed verdict.

KRS[4] 500.070(1) outlines the Commonwealth's burden to "prov[e] every element of the case beyond a reasonable doubt." Wanton murder is when a person engages in wanton conduct while driving "*under circumstances manifesting extreme indifference to human life*...which creates a grave risk of death...and [] causes the death of another person." KRS 507.020(1)(b) (emphasis added). Similarly, wanton first-degree assault is when the person's conduct causes serious physical injury, not death, to another. *See* KRS 508.010(1)(b). Chapman argues that the Commonwealth failed to produce sufficient evidence showing Chapman acted under circumstances manifesting an extreme indifference to human life. Thus, Chapman's argument turns on a degree of "wantonness."

The Commonwealth sought to prove these offenses by presenting both Chapman's blood test two hours after the collision and EDR data from Chapman's van, coupled with expert testimony. Furthermore, the Commonwealth presented multiple witnesses who observed both Chapman's van speeding southbound in the northbound fast lane on US 31W before the collision, and syringes in Chapman's possession immediately after the collision. And although the collision did not cause Ms. Gardener's pregnancy loss, it did

---

[4] Kentucky Revised Statutes.

5

kill Ms. Gardener's two young boys and left Ms. Gardener with serious physical injuries.

At the conclusion of the Commonwealth's evidence, defense counsel moved for a directed verdict on the charges of wanton murder and wanton first-degree assault. The trial court, looking at the evidence in the light most favorable to the Commonwealth, denied the motion. *See Bowling v. Commonwealth*, 553 S.W.3d 231, 235 (Ky. 2018) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). Chapman then challenged the Commonwealth's characterization by testifying in her own defense that while she did leave Landmark to buy and use drugs, she did not believe her conduct would affect anyone else. She simply believed that she would take US 31W home without issue.

Following the conclusion of all the evidence, defense counsel again moved for directed verdict on the charges of wanton murder and wanton first-degree assault arguing the Commonwealth failed to show that Chapman acted wantonly under circumstances manifesting an extreme indifference to human life. The Commonwealth argued that Chapman's own testimony made it even more apparent that her conduct was wanton under KRS 507.020(1)(b) and KRS 508.010(1)(b). The trial court agreed with the Commonwealth that a reasonable jury could find Chapman's conduct wanton from the Commonwealth's evidence. Accordingly, the trial court denied the motion for directed verdict.

6

Chapman's motions for directed verdict at the trial court level properly preserved this issue for our review. *See Ray v. Commonwealth,* 611 S.W.3d 250, 266 (Ky. 2020). A motion for directed verdict at trial is appropriate when the prosecution fails to produce "more than a mere scintilla of evidence." *Bowling,* 553 S.W.3d at 236-37 (quoting *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky. 1983)); *Commonwealth v. Benham,* 816 S.W.2d 186, 187-88 (Ky. 1991). The trier of fact has the responsibility "*to draw reasonable inferences from basic facts to ultimate facts.*" *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis added). And on appeal, we must review whether, under the totality of the evidence, it was clearly unreasonable for the jury to find Chapman guilty of wanton murder and wanton first-degree assault. *Benham,* 816 S.W.2d at 187.

Here, the Commonwealth fully met its burden to prove beyond a reasonable doubt that Chapman's conduct on November 13, 2022, was wanton and manifested extreme indifference to human life, causing a collision that killed two children and left their mother with serious physical injuries. As such, we hold that Chapman was not entitled to a directed verdict as it was not clearly unreasonable for a jury to find Chapman guilty of wanton murder and wanton first-degree assault.

In *Bowling,* 553 S.W.3d at 234, the defendant was driving under the influence of Xanax when "his [SUV] crossed the center line and struck a [pickup truck]" carrying three occupants inside. The driver of the truck died at the scene while the other two passengers sustained serious physical injuries.

7

*Id.* A test of the defendant's blood confirmed the presence of Xanax. *Id.* A jury found the defendant guilty of murder, two counts of assault, and a DUI. *Id.* at 234-35. On appeal, the defendant argued the trial court erred by denying his motion for directed verdict because "mere intoxication was not enough to rise to the requisite level of wantonness." *Id.* at 237. However, this Court disagreed as it "made clear that intoxication, *along with other factors*, can suffice to prove the wanton murder element of 'circumstances manifesting extreme indifference to human life.'" *Id.* (emphasis added). This Court found the defendant "admitted to having taken [both Xanax and Oxycodone] on the day of the collision"; the defendant drove into the wrong lane multiple times "before striking [the victim's vehicle] head-on"; and evidence indicated the defendant suffered a Xanax overdose. *Id.* at 237-38. Consequently, this Court concluded that "the totality of the facts '[permit] a reasonable jury to conclude that Appellant was [driving] under circumstances manifesting an extreme indifference to human life.'" *Id.* at 238.

Here, it is abundantly clear that the Commonwealth produced "more than a mere scintilla of evidence" to permit a reasonable jury to find Chapman guilty of wanton murder and wanton first-degree assault. *Id.* at 236-37.

On November 13, 2022, Chapman left Landmark, bought syringes and a gram of what she testified she believed to be heroin, and injected herself in the

arm. She clearly became intoxicated by the drug[5] because she testified that her knee felt better afterwards. And even if Chapman was unaware that she was using fentanyl, she nonetheless 1) intended to become impaired upon leaving Landmark; 2) knew how her body would respond once impaired; 3) intended to drive home impaired; and 4) began driving home impaired. Chapman then injected herself again *while* driving.

Additionally, while Chapman was driving under the influence of fentanyl, multiple witnesses observed Chapman's van speed past traffic, cross the brightly colored, double-yellow-lined rumble strips, and travel in the wrong lane. Chapman's van crashed into Ms. Gardener's car shortly after, which killed Ms. Gardener's two children and left her with serious physical injuries.

Immediately following the collision, multiple witnesses observed syringes and what appeared to be heroin in a cellophane bag in Chapman's van. Chapman's blood tested positive for fentanyl at the hospital. And the EDR data from Chapman's van was the final proof of her wanton conduct. *See Welsh v. Commonwealth*, 641 S.W.3d 132, 134-35 (Ky. 2022) (discussing the defendant's wanton conduct relative to his EDR data to support wanton assault and murder charges).

Certainly, injecting oneself with what is believed to be heroin before driving down a busy highway "creates a grave risk of death to another." KRS

---

[5] *See Estep v. Commonwealth*, 957 S.W.2d 191, 192 (Ky. 1997) ("Intoxication may be caused by either drugs or alcohol" (citing *Burnett v. Commonwealth*, 284 S.W.2d 654 (Ky. 1955))).

9

507.020(1)(b); KRS 508.010(1)(b). Likewise, simultaneously preparing and injecting oneself with drugs while driving impaired "[i]s wanton as defined by KRS 501.020(3)."[6] *Estep*, 957 S.W.2d at 193. Chapman's conduct while driving is wholly unlike *Johnson v. Commonwealth*[7] where this Court was compelled to reverse the conviction.

Based on the totality of the facts and evidence, the jury was well within its authority to find her guilty of wanton murder and wanton first-degree assault.

### III. CONCLUSION

Based on the foregoing, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Solicitor General

---

[6] "A person who creates such a [substantial and unjustifiable] risk but is unaware thereof *solely by reason of voluntary intoxication* also acts wantonly." KRS 501.020(3) (emphasis added).

[7] 885 S.W.2d 951, 952 (Ky. 1994) (reversing a conviction for wanton murder, in-part, because evidence showed the defendant was completely sober, "[t]he road was dry," and, although the speed limit was 55mph, there was no evidence he was speeding).